Joseph Henry **KYZAR**, Plaintiff-Appellant,

v.

**VALE DO RI DOCE NAVEGACAI, S. A.,** Defendant-Appellee.

No. 71-2702.

United States Court of Appeals, Fifth Circuit.

July 11, 1972.

Rehearing and Rehearing En Banc Denied Sept. 11, 1972.

Clifton S. Carl, New Orleans, La., for plaintiff-appellant.

Maurice C. Hebert, Jr., Charles E. Lugenbuhl, John A. Bolles, New Orleans, La., for defendant-appellee.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

This longshoreman's suit for personal injuries presents the question whether the district court properly instructed the jury on the difficult matter of operational negligence as unseaworthiness. Second-guessing jury instructions is tricky business, especially when the instructions require exposition of the law on a subject not *clearly* settled by the Supreme Court and this Court. Still, we feel compelled to hold that the instructions at issue here confused the jury and deprived the plaintiff of a fair chance to persuade the jury of his version of the facts.

I.

On May 5, 1970, the plaintiff Joseph Henry Kyzar and other longshoremen employed by Cooper Stevedoring Company were engaged in unloading sixty foot lengths of structural steel from the M/V JAYME MAIA, owned and operated by the defendant Vale Do Ri Doce Navegacai, S.A. The ship was moored at the Napoleon Avenue Wharf in New Orleans. A shore level crane with a hundred foot boom hoisted the steel beams out of the Number 5 hatch of the JAYME MAIA. A fellow longshoreman of the plaintiff operated the crane. He could not see into the hold of the ship and, in deciding when to "boom up" or "boom down", relied upon hand signals from another longshoreman stationed on the deck of the ship overlooking the hatch.

On signal from this flagman, the crane operator first spotted the boom

over the hatch. The crane cable was then hooked to the steel beams in the hold. Because the beams were some fifteen feet longer than the hatch opening, the load was "dipped" to get it clear of the hatch—moved to a catercornered position by the crane operator who would boom up or boom down.

Kyzar was injured while allegedly pushing the steel by hand to guide it out of the hatch. Kyzar testified: "a steel beam had been slung and the gear had begun to lift. The beam began to swing erratically and [Kyzar] was finally ridden by the beam to the bulwarks where he struck the side of the ship and fell into a hole at the edge of the cargo." The defendant's evidence tended to disprove that Kyzar had pushed the beam. It indicated that Kyzar had negligently failed to heed a warning from the flagman designed to alert longshoreman to possible swings by the cargo as it was lifted.

The crux of Kyzar's legal position in the district court was that the JAYME MAIA was unseaworthy.[1] First, Kyzar argued, no tag lines[2] were provided to be used during manual guidance of the steel beams, despite a regulation of the Bureau of Labor Standards requiring that "loads requiring continual manual guidance while in motion shall be provided with tag lines."[3] Kyzar contended that the failure to provide tag lines violated the regulation and rendered the ship unseaworthy as a matter of law; or, that even if the regulation did not

apply, proper equipment for the vessel would have included tag lines for the injury-causing unloading procedure.

Second, Kyzar tried to prove that the boom had been improperly spotted over the hatch and that this improper use of seaworthy equipment by the plaintiff's fellow longshoremen constituted an unseaworthy condition. Finally, Kyzar tried to show that he should have been provided with a "hard hat" during the unloading procedure. He based this contention, like his position on the need for tag lines, on both a BLS regulation[4] and on the fitness of the ship independently of those regulations.

The chief bone of contention in this Court is the lower court's charge to the jury on operational negligence, directly relevant to the alleged improper spotting of the boom and perhaps relevant to the tag line and hard hat issues as well. The charge was designed to require the jury to distinguish an unsafe *condition* amounting to unseaworthiness from a single negligent *act* of the plaintiff's fellow longshoremen:

> You must bear in mind that, in order for the ship owner to be liable for the negligent acts of the longshoremen, or for the improper use of seaworthy equipment by the [longshoremen], those acts or that use must create an unsafe condition of the ship or her appurtenances which subsequently causes injury. There can be no unseaworthiness if the negligent act or

1. It is "fully settled that a shipowner's liability for an unseaworthy vessel extends beyond the members of the crew and includes a longshoreman like the [appellant]." Usner v. Luckenbach Overseas Corp., 1971, 400 U.S. 494, 497–498, 91 S.Ct. 514, 516, 27 L.Ed.2d 562, 566, citing Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

Moreover, "the scope of unseaworthiness is by no means . . . limited [to the defective condition of a physical part of the ship itself]. A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The

number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage, might be improper. For any of these reasons, or others, a vessel might not be reasonably fit for her intended service." Usner v. Luckenbach Overseas Corp., *supra*, 400 U.S. at 499, 91 S.Ct. at 517, 27 L.Ed.2d at 567. (footnotes omitted).

2. A tag line is a line attached to a draft to guide it while it is in motion.

3. 29 C.F.R. § 1504.81(f) (1969).

4. 29 C.F.R. § 1504.105(a) (1969).

improper use and the resulting injury are simultaneous.

The law generally recognizes that a corporation is liable for the negligence of *its* employees. Therefore, a ship owner is not liable for the negligent acts of the stevedore's employees, that is, the longshoremen, but it becomes liable if the negligent acts of the longshoremen create an unseaworthy condition which subsequently causes injury. The law does not regard that an unsafe condition of the ship of unseaworthiness can be created if the negligent act and injury are simultaneous.

After deliberating for an undisclosed period of time, the jury asked the court for clarification of this part of the charge:

"Judge Cassibry:

We would like a diffinition [sic] of 'simultaneous' in reference to your charge on unseaworthiness causing an accident. Is it instantaneous or is it one contineous [sic] action?

GA White

Foreman"

The court recalled the jury and repeated its earlier charge on unseaworthiness without modifying the language defining operational negligence. After the jury asked for clarification of the meaning of "simultaneous", and after the trial court repeated the original language, counsel for the plaintiff specifically objected to the unelaborated charge; counsel for the defendant agreed that the charge was misleading. Even the court itself expressed doubt:

THE COURT:

Are there any objections?

COUNSEL FOR PLAINTIFF:

After hearing that again, something does bother me. It is possible the jury might have gotten the impression negligence of employees simultaneous with injury will not permit recovery. Of course, if this is a condition of failure to supply or some other reason for unseaworthiness, there will be failure—there will be recovery even though the negligence is contemporaneous.

THE COURT:

I don't think that came through.

Mr. Lugenbuhl? [counsel for defendant]

You know, that's the reason I'm not going to change it, because you all will never agree on what I should tell them. And I don't blame you because that's an area we really need a lot of guidance on.

COUNSEL FOR DEFENDANT:

I don't agree with the charge that you gave, Judge.

THE COURT:

All right.

COUNSEL FOR DEFENDANT:

* * * We again suggest to the Court the operation of negligence and the effect of the single act of negligence of fellow longshoremen should have been brought to the jury in light of the special charge that we previously requested. The thing, the crushing dilemma, if it be a dilemma, highlights the needs to properly establish precedent in these charges. We didn't think the Court did originally, and we renew our objection.

The charge was not changed, the jury returned a verdict in favor of the defendant in all respects and this appeal followed.

II.

In considering the adequacy of the trial court's instructions to the jury, "we must consider the charge as a whole, in connection with the contentions made by the parties in the trial court, and from the standpoint of the jury. If the charge in general correctly instructs, then even though a portion is technically imperfect, no harmful error is committed." Troutman v. Southern Ry. Co., 5 Cir. 1971, 441 F.2d 586, 590; Webster v. Sea Drilling Corp., 5 Cir.

1969, 411 F.2d 411, 413; Grey v. First National Bank, 5 Cir. 1968, 393 F.2d 371, 387. "Our scrutiny of the district court's instructions must be orbitary and universal, not narrow and monocular." McDaniel v. Slade, 5 Cir. 1968, 404 F.2d 607, 609, and cases cited.

■ The trial court's charge to the jury cannot stand when, as a whole, the charge leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. In the instant case the trial court's charge leaves us with precisely such doubt. We agree with the appellant that, particularly after the jury had indicated its bewilderment with the word "simultaneous" and the appellant had objected to a rerun of the original instruction, it was not enough for the trial judge to repeat the initial instruction on operational negligence.

■ The court was attempting—quite properly—to convey to the jury that "unseaworthiness is a condition" and that "the isolated, personal negligent act of the [plaintiff's] fellow longshoreman" through the improper use of non-defective equipment does not render a ship unseaworthy. Usner v. Luckenbach Overseas Corp., 1971, 400 U.S. 494, 500, 91 S.Ct. 514, 518, 27 L.Ed.2d 562, 567.[5] An army of commentators has wrestled with the Usner distinction and often despaired of understanding its refinements.[6] Thus the task of charging a jury on the distinction between act and condition is one no trial judge welcomes and no appellate judge envies.

■ Still, we are of the opinion that the instant instruction embodies a notion of operational negligence which, when interpreted from the jurors' point of view, conflicts with Usner and the developing law of unseaworthiness. In one sense, whether a negligent act or improper use by a fellow longshoreman and the resulting injury are "simultaneous" is relevant to a determination of unseaworthiness. An act of a fellow longshoreman has only an instantaneous duration when it begins or develops, for the first time, contemporaneously with injury to the plaintiff. And—whether for sound policy reasons or not—it appears that a greater-than-instantaneous duration is what converts a single act of negligence into a condition tantamount to unseaworthiness. The condition need not exist for long enough to permit discovery by a reasonably prudent shipowner. Mitchell v. Trawler Racer, Inc., 1960, 363 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941. But the act must in some way have roots which can be traced back in time for more than the instant separating act and injury.

■ The relevant simultaneity, it must be noted, is that of injury and inception of substandard conduct, not injury and simple occurrence of substandard conduct. We explained this distinction recently in Robinson v. Showa Kaiun K. K., 5 Cir. 1971, 451 F.2d 688, 690:

> Usner distinguished "instantaneous" unseaworthiness from what might be called "connected" unseaworthiness. A longshoreman or one of his fellows might engage in a congeries of negligent acts that are of such a character or that continue for such a length of time that they become related to the status of the vessel. That congeries of acts might create a "condition" of unseaworthiness, so that an individual act of negligence within or after the congeries might give rise to liability under the unseaworthiness doctrine. However, if the negligent act of a longshoreman is not

5. Accord. Dillon v. M. S. Oriental Inventor, 5 Cir. 1970, 426 F.2d 977; Antoine v. Lake Charles Stevedores, 5 Cir. 1967, 376 F.2d 443; Grigsby v. Coastal Marine Service of Texas, Inc., 5 Cir. 1969, 412 F.2d 1011; Robichaux v. Kerr McGee Oil Industries, Inc., 5 Cir. 1967, 376 F.2d 447; Reed v. MV Foylebank, 5 Cir. 1969, 415 F.2d 838.

6. See, e. g., Ellman, Instant Unseaworthiness: Mascuilli Revisited, 1 J.Mar.L. 573 (1970); Edelman, Comment, 2 J. Mar.L. 871 (1971); Note, 13 B.C.Ind. & Comm.L.Rev. 568 (1972); Note, 49 Tex.L.Rev. 911 (1971); Note, 46 Tulane L.Rev. 309 (1971); Note, 32 La. L.Rev. 19 (1971).

part of any *congeries* of negligent acts connected to the status of the vessel or to its loading but is rather an isolated "instantaneous" act of negligence within an otherwise seaworthy method of loading on an otherwise seaworthy vessel, then that one act of negligence by the longshoreman or his fellows will not render the vessel unseaworthy. *Compare* Alexander v. Meiji Kaiun K.K., D.C.La.1961, 195 F.Supp. 831, aff'd sub nom. Strachan Shipping Co. v. Alexander, 5 Cir. 1962, 311 F.2d 335, *with* Taylor v. S. S. Helen Lykes, 5 Cir. 1968, 402 F.2d 777, and Usner v. Luckenbach Overseas Corp., *supra.*

For example, a single act of an incompetent crewman—a violent attack on a fellow crew member—may demonstrate the unseaworthiness of the crew, but only if the assailant has previously demonstrated a "savage disposition." Boudoin v. Lykes Brothers Steamship Co., 1955, 348 U.S. 336, 75 S.Ct. 382, 99 L. Ed. 354. This restriction on recovery in the *Boudoin* situation reflects the need to link the substandard conduct of fellow crew members to an earlier point in time —when the disposition for violence established itself in the assailant's personality and thereby created the condition of his unfitness for service with other men. Similarly, "a continuous course of negligent conduct by a crewman, when coupled with a negligent act which results in injury, could provide a basis for an unseaworthiness recovery. The course of negligent conduct would be evidence of the incompetence of the crew to meet the contingencies of the voyage and of the crew's unsuitability for its intended service. The single negligent act which causes injury is not evidence of unseaworthiness per se but it does serve to connect the injury with the existing unseaworthy condition. The single act would establish the requisite causal connection between the unseaworthy condition of the crew, as evidenced by the continuing course of negligent conduct on the part of the crewman, and the injury to the seaman." Note, Unsea-

worthiness and Operational Negligence: Condition versus Cause—Usner v. Luckenbach Overseas Corp., 13 B.C. Ind. & Comm.L.Rev. 568, 580 (1972).

■■ It is apparent from the foregoing analysis that a trial court invites serious confusion by instructing against liability in unseaworthiness "if the negligent act or improper use and the resulting injury are simultaneous." For the jury may well believe that an individual act causing immediate injury cannot reflect unseaworthiness even though the act occurs within or after "a *congeries* of negligent acts that are of such a character or that continue for such a length of time that they become related to the status of the vessel." Robinson v. Showa Kaiun K.K., *supra.* In the present case, the unelaborated use of "simultaneous" would permit the jury to believe the plaintiff's contention that the boom was spotted incorrectly throughout the unloading operation—plainly a condition of unseaworthiness—and yet still deny recovery. The jury might reason that the injury occurred simultaneously with continued improper spotting of the boom by Kyzar's fellow longshoreman. The instruction was fatally ambiguous.

■ When a trial court must charge on operational negligence, the court's first responsibility is to establish, in so many words, the Supreme Court's own distinction between operational negligence and unseaworthiness. The jury must be told to distinguish between an "isolated, personal negligent act of [a] fellow longshoreman" and an individual act of such duration or character that it may be described as a condition of the crew and consequently the vessel itself.

In defining an "isolated, personal negligent act of a fellow longshoreman," a court may wish to suggest the relevance of the time when the act causing injury first commences. We do not say that the consideration is entirely beside the point. We do say, though, that the potential for confusion is great when a jury is told to determine operational negligence by considering the simultane-

ity of act and injury. Once the concept is launched into the jury's minds, it is hard to see how it can be adequately explained in less than several complex sentences. We seriously doubt that the jury will do better after a heavy dose of "simultaneous" than it would if left to distinguish a single isolated act of negligence from an act traceable to a time prior to injury and therefore linked to the condition of the vessel or its crew.[7]

## III.

For the interests of judicial economy, other alleged defects in the charge deserve brief comment. The appellant complains of the trial court's handling of the instruction on tag lines.[8] First, the appellant objects to the court's failure to charge specifically that the failure to provide tag lines might still constitute unseaworthiness even though the Bureau of Labor Standards regulation did not apply to the facts of this case. Second, Kyzar objects to the failure of the court to reread, after the jury was recalled for further instructions, the original charge on the tag line regulations.

 We feel it unnecessary to comment on the failure to reread the tag line instruction when the jury was re-

called. The problem is unlikely to recur during the second trial of this cause. However, given the central importance of the dispute over tag lines, the court's initial instruction should have told the jury specifically that the failure to provide tag lines might constitute unseaworthiness even if the lines were not required by BLS regulations.[9] The court's actual instruction carried a strong implication that unseaworthiness, as it related to the tag line issue, could be made out only by a finding that the regulation had been violated. Moreover, the jury should have been reminded specifically of the terms of the tag line regulation, and required to find the Regulation applicable if it determined this load to have required continuous manual guidance while in motion. There was much clarity to gain and little to lose by such a reminder, even though the Regulation was in evidence and had been referred to extensively in summation.

As for the hard hat charge, the court instructed that the hard hat regulation was inapplicable as a matter of law, but did not instruct that the regulation was not dispositive. The inevitable effect of the instruction was to suggest that the jury need not consider the plaintiff's contentions that hard hats ought to have

---

7. As an Appendix to this opinion we have reprinted the charge on operational negligence given by Judge Edward Weinfeld of the Southern District of New York. Norflect & Lane v. Isthmian Lines, Inc., Civil Action No. 142–95 & 96 (S.D.N.Y., Nov. 23, 1966). Although this charge was given before the Supreme Court decided Usner, we believe that the charge puts before the jury, a lucid and comprehensible exposition of operational negligence. Of course, we cannot now foresee all objections to this charge arising in the thousands of specific factual settings to be litigated in the future. Nor have we any jurisdiction to decide those cases by promulgating a uniform charge on operational negligence, binding in advance. The charge is only a guideline.

8. The Court's charge read as follows:
 "Certain Federal Regulations promulgated by the Bureau of Labor Standards of the United States Department

 of Labor were introduced into evidence in this case. I have found as a matter of law that the Regulation requiring hard hats does not apply and was not violated in this case.
 If you find that the Regulation requiring the use of tag lines was violated, this constituted negligence as a matter of law and the vessel was rendered unseaworthy as a matter of law, and if such unseaworthiness or negligence was a proximate cause of plaintiff's injuries, defendant shipowner would be liable."
 It was not repeated when the jury was recalled for further instructions on unseaworthiness.

9. After the initial reading of the charge, Kyzar's lawyer stated, "I do take exception to there not being a charge that although there may be no labor standards governing a particular condition of seaworthiness you may still find unseaworthiness to be the cause of the accident."

been provided as part of the ship's equipment.

■ Finally, we note the appellant's contention that the court's instruction on "spotting the boom" was too general [10] and should have stated in context that "a boom that is spotted incorrectly renders the vessel unseaworthy." We agree.

Because the court's instruction on operational negligence, repeated after confusion was apparent, was confusing and may have substantially deprived the plaintiff of fair treatment by the jury, we conclude that the judgment below must be vacated and the cause remanded for a new trial.

APPENDIX: See footnote 7

The law distinguishes between a condition and an act, which may or may not bring about a condition of unseaworthiness.

Now this concept involves a rather fine distinction.

Some courts have referred to it as a metaphysical distinction, or "hairsplitting," but nonetheless it exists.

I will try to simplify it for you, since you are called upon to make the determination of whether the ship was in fact unseaworthy.

Unseaworthiness is a condition whereby a vessel or its equipment is not reasonably fit for its intended use, and if that condition of unfitness exists at the time of the accident, and as a result a crew member or longshoreman is injured, the shipowner is liable no matter how the condition was brought about or who brought it about.

Indeed, if the condition exists, whether it was brought into existence by the ship's crew, a third party, or even an injured's fellow employee, the shipowner would still be liable.

Now, let us take a seaworthy vessel with appliances that are reasonably fit for their intended use or purpose on which normal operations are in process.

And during the course of such operations the previously fit ship or appliance is rendered unsafe because of the negligent act of some person.

In such an instance, if the negligent act itself is in process and has not yet ripened into an unseaworthy condition, the act, during its commission, is referred to as operational negligence—and in that limited circumstance the shipowner would not be liable.

In other words, if the defect arose as a momentary step or a phase in the progress of work aboard an otherwise seaworthy ship, and was an incident in the continuous course of operation,—and an unseaworthy condition had not yet resulted, the shipowner is not liable.

On the other hand, if the momentary phase had ended and the act had ripened into a condition of unseaworthiness at the time the accident occurred, then the shipowner is responsible.

Thus, there is a point at which negligent conduct ends and an unseaworthy condition begins.

If the act results in the condition of unseaworthiness at the time of the accident, then the owner is liable; if the act falls short of creating the condition at the time of the accident, it is not.

Actually, the controversy here centers about the parties' respective contentions as to whether the accident was due to

---

10. The district court gave the following instruction on "spotting the boom":
 "The plaintiff contends that . . . improper spotting of the boom caused the ship to be unseaworthy and caused him to be provided with an unsafe place to work." "Improper or negligent use of seaworthy equipment by plaintiff's fellow longshoremen may create a condition of unseaworthiness.

A shore crane used by a stevedore in the unloading of a ship is considered as part of the ship's gear for purposes of the issue of seaworthiness. Improper methods of handling cargo may create a condition of unseaworthiness even though the equipment used is in reasonably safe condition."
 The two paragraphs were not consecutive in the original charge.

unseaworthiness or caused by operational negligence, or as the lawyers referred to it in their summations, an instantaneous act.

PER CURIAM:

The Petition for Rehearing is Denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is Denied.