United States Court of Appeals,

Fifth Circuit.

No. 93-8376.

Jerry DAVIS, Plaintiff-Appellee, Appellant,

v.

ECTOR COUNTY, TEXAS, et al., Defendants,

Ector County, Texas, and John Smith, District Attorney of Ector County, Texas, Defendants-Appellants,

O.A. "Bob" Brookshire, Individually and in his capacity as Ector County Sheriff, Defendant-Appellee.

Dec. 30, 1994.

Appeal from the United States District Court for the Western District of Texas.

Before WISDOM and JONES, Circuit Judges, and FITZWATER, District Judge[*].

WISDOM, Circuit Judge:

The plaintiff, Jerry Davis, seeks redress in federal court for his loss of employment with the principal defendant, Ector County, Texas. Our decision today will only partially satisfy him: In part we affirm and in part we reverse the district court's judgment.

In November 1991, Davis filed suit against Ector County, Texas; Gary Garrison, individually and in his official capacity as Ector County District Attorney; Sheriff O.A. "Bob" Brookshire; and two deputy sheriffs, David Weaver and Eldon Blount. In his complaint, Davis alleged that the defendants fired him in

---

[*]District Judge of the Northern District of Texas, sitting by designation.

retaliation for his sending a letter, the contents of which we detail below. In so doing, he contends, they violated his First Amendment rights and the Texas Whistle Blower Act[1].

Davis began his tenure with Ector County as an investigator for the Permian Basin Drug Task Force ("Task Force") in June 1990. As a Task Force employee, Davis came under the supervision of the District Attorney who at that time was Gary Garrison. In October of 1991, his wife, Connie Davis, filed a sexual harassment claim against her employer, the Ector County Sheriff's Office, in the Ector County Commissioners' Court. At some point in this general time frame, Garrison admonished the plaintiff not to involve the Task Force or the District Attorney's office in his wife's lawsuit. As part of that warning, Garrison told Davis to stay away from the Sheriff's office and keep to a minimum his contacts with the Sheriff's employees.

The defining moment of this action came when Davis sent a letter to the Ector County Commissioners' Court. In that letter, Davis set out in detail his wife's allegations of sexual harassment at the Sheriff's office. Davis contends that he sought to underscore the seriousness of his wife's allegations and, more, squelch rumors that his wife's complaint was fabricated as a means of causing the current Sheriff to resign, or suffer a weakened

---

[1]Tex.Rev.Civ.Stat.Ann. art. 6252-16a, § 2 (Vernon Supp.1993). The statute has been updated and now appears at Tex.Gov't Code Ann. §§ 554.001 *et seq.* (Vernon Supp.1994).

public image.[2]  He asserts that he also sought to stave off a potential official coverup of sexual harassment in the Sheriff's Office.

When Garrison learned that Davis had written the letter to the court, he felt that Davis had defied him and he promptly terminated Davis's employment.  Davis believes that he was terminated because he exercised his First Amendment rights and because he reported a violation of law to the Ector County Commissioners' Court.  Accordingly, he filed suit.  The defendants answered with the defense that Davis was discharged for insubordination and, in particular, enmeshing the Task Force in the private affairs of his wife.

Davis's suit touched off a meandering procedural journey that dismissed and reinstated claims and parties alike.  In his First Amended Complaint, Davis alleged five causes of action, each relating to specific defendants.  He alleged that Ector County and Garrison violated his First Amendment rights;  that Ector County violated his rights under the Texas Whistle Blower Act;  that Brookshire, Weaver, and Blount violated his liberty interest under the Fourteenth Amendment;  that Ector County and Brookshire intentionally interfered with his business relationship;  and that Brookshire made slanderous statements which damaged his reputation.

---

[2]These rumors theorized that Davis himself was plotting a run for Sheriff.  As a means of putting an end to that talk, Davis attached to his letter two other letters he had written to the Republican and Democratic party chairmen disavowing any intention of running for Sheriff as a representative of either party.

Garrison was the first defendant to file a summary judgment motion. The district court denied Garrison's motion on Davis's First Amendment claim but granted summary judgment on the Whistle Blower claim. Ector County filed a separate motion for summary judgment, which the district court similarly granted as to Davis's Whistle Blower claim. At that point, the court dismissed the Whistle Blower claim in its entirety. The district court similarly dismissed Davis's Fourteenth Amendment claim against Brookshire, Weaver, and Blount.[3]

In March 1993, however, the district court granted Davis's motion to reinstate his Whistle Blower claim. In the interim, on January 1, 1993, John Smith began his term as District Attorney of Ector and, as such, replaced Garrison as the named defendant in the suit against the District Attorney in his official capacity.

Eventually a jury trial was held. The jury found against Smith, in his official capacity as District Attorney, and against Ector County on both the First Amendment and Whistle Blower claims. The jury awarded Davis $90,800 in compensatory damages and $200,000 in punitive damages. In accordance with the jury's verdict, the district court held that Davis take nothing from Brookshire in his individual or official capacities and that Ector County and Smith were liable jointly and severally. In addition, the court ordered that Davis be reinstated to his old job within ten days. Finally,

---

[3]In that claim, Davis charged that the defendants violated his Fourteenth Amendment liberty interest by falsely identifying him as a police officer who raped a female inmate two years previously.

the court denied the defendants's motion for a new trial.[4] Everybody appeals.[5]

## I. The First Amendment

The defendants assign three distinct errors to the trial court's judgment against them on Davis's First Amendment claim. First, they contend that the court erred in instructing the jury that Davis's speech was on a matter of public concern. Second, they contend that the court should have granted their motion for judgment on the grounds that the state's interest in promoting the efficiency of public services outweighed Davis's and the public's interest in the speech in question. Last, the defendants contend that the district court failed to identify the District Attorney as a policy maker of Ector County, a predicate to a finding of liability; accordingly, they assert, the court should have granted their motion for a new trial. We take these arguments in turn.

## A.

The first question presented is whether the district court erred when it instructed the jury that the plaintiff's speech was on a matter of public concern. Davis's letter focused on the alleged sexual harassment of assaults on employees of the Ector County Sheriff's Department. It hinted at a possible coverup at

---

[4]From this point in the opinion forward, "defendants" refers only to Ector County and District Attorney Smith.

[5]Davis originally raised a point of cross-appeal against Brookshire as well, but later dropped it. Hence, the present appeal concerns only Ector County and Smith in his official capacity and only the issues of whether those defendants violated Davis's First Amendment rights and the Texas Whistle Blower Act.

the Sheriff's office which would prevent the matter from being fully investigated.[6]  After a *de novo* review,[7] we conclude that the letter addresses matters of public concern.

The United States Supreme Court set the parameters for our inquiry in *Connick v. Myers*.[8]  In *Connick,* the Court observed that speech concerning matters of public interest "is more than self-expression;  it is the essence of self-government". Accordingly, speech by public employees on public issues "occupies the "highest rung of the hierarchy of First Amendment values' ".[9] We note that, were we to find that the subject matter of Davis's letter is not a matter of public concern, our inquiry would end.[10]

There is perhaps no subset of "matters of public concern" more important than bringing official misconduct to light.[11]  In

---

[6]Although not the subject of this appeal, Davis alluded in his affidavit to a previous instance in which the Sheriff's department knew of, but covered up, the sexual harassment of some department employees.  By that reference, Davis intends to place the letter here at issue into a larger context.  He contends that he wrote the letter to forestall any similar attempt to interfere with a proper investigation into his wife's allegations.

[7]*See Rankin v. McPherson,* 483 U.S. 378, 386 n. 9, 107 S.Ct. 2891, 2898 n. 9, 97 L.Ed.2d 315 (1987);  *Dodds v. Childers,* 933 F.2d 271, 273 (5th Cir.1991).

[8]*Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983).

[9]*Id.* (quoting *N.A.A.C.P. v. Claiborne Hardware Co.,* 458 U.S. 886, 913, 102 S.Ct. 3409, 3425, 73 L.Ed.2d 1215 (1982)).

[10]*Id.* at 146, 103 S.Ct. at 1689-90 (a finding that employee expression is not on a matter of public concern pretermits judicial inquiry into other reasons for discharge).

[11]*Thompson v. City of Starkville, Miss.,* 901 F.2d 456, 463 (5th Cir.1990).

*Brawner v. City of Richardson, Tex.*[12], we stated that "the disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection, especially when it concerns the operation of a [law enforcement agency]".[13] Davis's letter is squarely within *Brawner* 's ambit: it addresses the misbehavior of public officials (the sexual harassment of public employees) and discloses the possibility of an official coverup.

The defendants urge that we view Davis's letter differently by looking to his purpose in writing it. They contend that Davis's motivation in writing the letter was to dispel the rumors then circulating that his wife fabricated the sexual harassment charges so that Davis would have a clear path to the Sheriff's office. This is a purely private motive, they contend, outside the constitutional protection accorded to matters of public concern. For support they rely on *Dodds v. Childers*[14].

In *Dodds,* we held that a speaker's primary motivation may be considered when evaluating whether the letter addresses a matter of public concern.[15] In that particular case, we concluded that the

---

[12]855 F.2d 187, 192 (5th Cir.1988).

[13]*See also Thompson,* 901 F.2d at 463 (the exposure of misconduct in a police department "should be classified as speech addressing a matter of public concern"); *Conaway v. Smith,* 853 F.2d 789, 796 (10th Cir.1988) (per curiam) ("Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import.").

[14]933 F.2d 271 (5th Cir.1991).

[15]*Id.* at 273.

7

letter-writer was more concerned with her job security and working conditions than with any issue in the public interest.[16]  Hence, we held that Dodd's speech failed to constitute a matter of public concern.  We were explicit, however, that a proper inquiry does not elevate motive to a determinative factor;  instead, we are to examine the form, content, and context of the statement.[17]

A review of the content, form, and context of Davis's letter reveals that, although Davis may have had mixed motives, his letter unquestionably addressed a matter of public concern.[18]  As to content, the test is whether the information in the letter was "relevan[t] to the public's evaluation of the performance of governmental agencies".[19]  "[R]eports of sexual harassment perpetrated" on public employees is of serious public import.[20]  The fact that he also sought to strengthen the credibility of his wife does nothing to dilute the public interest inherent in the letter's

---

[16]*Id.* at 273-74.

[17]*Id.* at 274;  *Connick,* 461 U.S. at 147-48, 103 S.Ct. at 1690-91.

[18]The defendants have confused the catalyst for prompting Davis to write the letter with his purpose in doing so.  The catalyst was Davis's realization that many believed that his wife's allegations of sexual harassment were fabricated.  His purpose, however, was to dispel those rumors by detailing the seriousness of his wife's allegations.  He hoped his letter would attest to the veracity of his wife's charges.

[19]*Coughlin v. Lee,* 946 F.2d 1152, 1157 (5th Cir.1991) (footnotes and internal quotations omitted).

[20]*See Wilson v. UT Health Center,* 973 F.2d 1263, 1269 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993).

contents.[21]

The form and context of Davis's letter lend further support to our conclusion.  First, Davis wrote the letter in his capacity as a citizen, not as a public employee.[22]  He signed the letter, "Jerry Davis, 1601 E. Century, Odessa, Texas 79762".[23]  Moreover, he has never been an employee of the Sheriff's office—the subject of the letter.  Davis's additional letters to the Democratic and Republican parties further underscore the public nature of the letter in question, as does his decision to write to the court, instead of to his supervisor.[24]

B.

---

[21]*See Dodds,* 933 F.2d at 273 ("an element of personal interest on the part of an employee in the speech does not prevent a finding that the speech as a whole raises issues of public concern").  It is important to note, however, that a private issue does not transmogrify into a matter of public concern merely because the topic might have been of interest to the public under other circumstances.  *Id.; Connick,* 461 U.S. at 149 & n. 8, 103 S.Ct. at 1691 & n. 8.

[22]*See Thompson,* 901 F.2d at 461.

[23]This should clear up a misconception pressed by the defendants.  They contend that Davis signed his letters "Jerry Davis, Permian Basin Task Force"—that is, as a public employee, not as a private citizen.  It is true that his letters to the Democrat and Republican parties contained that signature.  Those letters, however, merely disavowed his intention to run for Sheriff's office.  The letter at issue, the one sent to the Commissioners' Court, contained his signature as a private citizen.

[24]The fact that he wrote his principal letter to the court rather than, say, posting a bill in a public square does not affect the public importance of the speech in question.  *See Wilson,* 973 F.2d at 1270 (speaker did not forfeit protection by choosing an internal forum); *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1577 (5th Cir.1989) (employee's testimony in a closed meeting was protected speech), *cert. denied,* 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990).

Not all matters of public concern are ripe for comment by public employees in all circumstances. The Supreme Court has instructed that we must consider the state's interest in promoting the efficiency of the public services it provides through its employees.[25] Although we weigh a number of factors, our inquiry centers on three: (1) whether the speech was likely to generate controversy and disruption; (2) whether the speech impeded the general operation of the department; and (3) whether the speech affected the working relationships necessary to the proper functioning of Ector County administration.[26] Our review of these factors supports the district court's judgment that the value of the speech outweighed the threat that the speech posed to efficiency.

Our review of the record discloses no impairment to the efficiency of Ector County administration or any County offices as a result of Davis's letter. No evidence exists that the letter Davis wrote defied Garrison's instruction to give the Sheriff's office a wide berth, let alone handicapped the communication between the two offices or their working relationship.[27] In fact,

---

[25]*Pickering v. Board of Education of Township High School District 205,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811, 817 (1968).

[26]*See Brawner,* 855 F.2d at 192. Other factors we have considered include the time, place, and manner of the employee's speech and whether the employee's conduct could be considered hostile, abusive, or insubordinate. *Click v. Copeland,* 970 F.2d 106, 112 (5th Cir.1992).

[27]Davis never mentioned the District Attorney's office in his letter nor intimated in any way that the scope of his concerns went beyond underscoring the gravity of his wife's

10

the Sheriff himself testified that Davis's letter did not upset him nor did it cause any appreciable change in the tenor of the departments' communication.[28]

C.

The defendants next assign error to the district court's finding that Garrison, as District Attorney, was a "policy maker" for Ector County.[29]  The defendants argue that the District Attorney is an officer of the state and, thus, incapable of being a policy maker for Ector County.

We rejected this very contention in *Crane v. Texas*.[30]  In *Crane,* we acknowledged that there are "numerous, if relatively minor, attributes of a State official" possessed by a Texas

---

allegations.

[28]That is not surprising.  This case is distinct from the typical scenario in which an employee complains about his job or his superiors and, in so doing, stirs up the smooth workings of the office.  Here, Davis complained about a problem in another branch of the County where he has never worked.

[29]As a preliminary step toward holding a governmental entity liable for the acts of its agents, the court must identify the policy makers, that is:

> those officials or governmental bodies who speak with final policy making authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.

*Jett v. Dallas Indep. School District,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989).

[30]766 F.2d 193 (5th Cir.), *denying reh.,* 759 F.2d 412 (5th Cir.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985).  We acknowledged there that "[t]he point is a nice one and fairly debatable".  *Id.* at 194.  That concession did not affect our conclusion, however, that the District Attorney is a county official.  *Id.* at 195.

district attorney.[31]  Still, none of those attributes displaces the "[o]ther and more significant factors" that militate in favor of viewing the district attorney as a county official.[32]  The district attorney's office is limited to exercising its powers in Ector County, it is elected by Ector County voters, and it is supported with Ector County funds.[33]  In sum, although the office (like Ector County itself) is a creation of the state, all of its functioning is county-based.

The present matter is a case in point.  Garrison enjoyed free reign over the District Attorney's office and set department policy without oversight.  His decision to fire Davis is but one example.  As such, when he fired Davis, Garrison was acting as the policy maker for Ector County and was exercising official policy.[34]

---

[31]*Id.* at 194.

[32]*Id.* at 195.

[33]*See id.*

[34]This case is readily distinguishable from *Echols v. Parker,* 909 F.2d 795 (5th Cir.1990), upon which the defendants rely.  *Echols* involved a district attorney's attempt to enforce an unconstitutional state statute.  Specifically, the district attorney instituted a criminal action against Lonnie Echols and four others for participating in a peaceful protest and boycott of a Sunflower, Mississippi pharmacy.  *Id.* at 797.  The district attorney acted expressly pursuant to Miss.Code Ann. § 97-23-85 (1972), an anti-boycott statute.  That state statute later was declared unconstitutional.  *Id.*  No question of the district attorney as policy maker was presented.

Instead, the case at hand bears a stronger resemblance to *Van Ooteghem v. Gray,* 584 F.Supp. 897 (S.D.Tex.1984), *aff'd,* 774 F.2d 1332 (5th Cir.1985).  In *Gray,* we affirmed the district court judgment that the district attorney derives his policy making authority from the electorate and "need not be connected to a council or other governing body".  *Id.* at 898.  As an elected official who represents

II. The Texas Whistle Blower Act

We turn now to Davis's claim under the Texas Whistle Blower Act.[35]  The statute provides, in pertinent part:

A state or local governmental body may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who reports a violation of law to appropriate law enforcement authority if the employee report is made in good faith.[36]

The defendants assign a number of errors to the court's handling of the Whistle Blower claim.  Because we hold that the district court's instructions to the jury were impermissibly vague regarding the causation element, we must reverse.

A.

The Texas Whistle Blower Act "is designed to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing".[37]  As a

---

the final authority in his office, his "action must necessarily be considered to represent official policy". *Id.; cf. Turner v. Upton County, Texas,* 915 F.2d 133 (5th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991) ("Because of the unique structure of county government in Texas ... elected county officials ... hold virtually absolute sway over the particular tasks or areas of responsibility entrusted to him by state statute and is accountable to no one other than the voters for his conduct therein.") (quoting *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir.1980)).

[35]Tex.Rev.Civ.Stat.Ann. art. 6252-16a, § 2 (Vernon Supp.1993).

[36]In the present matter, we refer to Davis's letter as the "report" at issue.

[37]*Castaneda v. Texas Dept. of Agriculture,* 831 S.W.2d 501, 503 (Tex.App.—Corpus Christi 1992).

13

remedial statute, we construe it liberally.[38]

The defendants raise both substantive and technical objections. As to the former, the defendants argue that the purpose of the Whistle Blower Act is to encourage employees to come forward with knowledge of the misdeeds of public officials without fear of reprisal,[39] but assert that the purpose is not furthered by the facts of this case. *Castaneda,* the most helpful recent construction of art. 6252-16a, clarified some ambiguities in the statute and, in so doing, expressly rejected much of the defendants' argument.[40]

For example, the *Castaneda* court rejected the assertion that the plaintiff must "initiate" a report. Instead, the court reasoned, the statute requires only that the plaintiff report a violation of the law; that he be an initiator is not required. The court stated that the phrase "reports a violation of the law" includes

> any disclosure of information regarding a public servant's employer tending to directly or circumstantially prove the substance of a violation of criminal or civil law, the State

---

[38]*See Id.; Fuchs v. Lifetime Doors, Inc.,* 939 F.2d 1275 (5th Cir.1991).

[39]*See Lastor v. City of Hearne,* 810 S.W.2d 742, 744 (Tex.Civ.App.—Waco 1991, writ denied).

[40]The defendants rely almost exclusively on *Winters v. Houston Chronicle Pub. Co.,* 795 S.W.2d 723 (Tex.1990) and, in particular, on Justice Doggett's concurring opinion for almost all of their Whistle Blower arguments. But *Winters* did not address the statute at issue. Instead, the *Winters* court addressed whether a whistle blower in the *private sector* could state a cause of action in spite of Texas's recognition of the employment-at-will doctrine. Justice Doggett, in his oft-cited concurrence, outlined what that cause of action might look like.

14

or Federal Constitution, statutes, administrative rules or regulations.

In the instant case, the defendants contend, Davis brought no new facts to light; he merely attempted to purify the speculation as to his wife's motives in filing the sexual harassment suit.

The letter itself, underscored by our First Amendment analysis of its contents, renders that charge unpersuasive. Davis detailed for the Commissioners' Court the sexual harassment allegations and the possibility of an official coverup, plainly satisfying the requirement that the plaintiff report a violation of the law. We thus reject, as did the district court upon reinstating Davis's Whistle Blower claim, the contention that "the whistle had already blown" and, therefore, that the statute did not protect Davis.[41]

The defendants' more technical or, perhaps, textual objections also are easily dispatched. They assert, for instance, that Davis has not met the "in the workplace" requirement: Davis reported violations alleged to have occurred in the Sheriff's department, by whom he has never been employed. Using that logic, they similarly charge that Davis's report did not concern his "employer".

The workplace and employer in this case, however, is Ector County, not merely Davis's immediate supervisor. If we gave the statute the narrow construction that the defendants urge, a whistle

---

[41]Implicit in this conclusion is a rejection of the defendants' charge that the trial court erred when it incorporated the holding in *Castaneda* in the jury instructions. In fact, the district court, in reinstating the claim, was guided by the holding in *Castaneda*. Moreover, the appellants concede that the plaintiff did initiate a report.

15

blower's protection would extend only so far as his departmental assignment. Such would contravene the purpose of the statute. We conclude that Davis reported violations concerning his employer and addressed issues concerning his workplace.[42]

B.

Although we conclude that Davis stated a proper cause of action under the Texas Whistle Blower Act, we nonetheless must reverse the judgment of the district court because the instructions tendered to the jury were sufficiently vague as to permit uncertainty as to the correctness of the verdict.

"The function of the reviewing court with respect to instructions is to satisfy itself that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law."[43] The district court has wide latitude in instructing the jury on the law and we will thus

---

[42]Davis also satisfied the requirement that the report be made to the appropriate law enforcement authorities. The *Castaneda* court defined an appropriate law enforcement authority as "any entity with the capacity through legal processes or otherwise to take remedial action with respect to the alleged violation". *Castaneda,* 831 S.W.2d at 504. *Accord Knowlton v. Greenwood Independent School Dist.,* 957 F.2d 1172, 1181 (5th Cir.1992); *see also Travis County v. Colunga,* 753 S.W.2d 716, 719 (Tex.App.—Austin 1988, writ denied) (legislature intended term "appropriate" to be "sufficiently elastic" to include any civil authorities having power to compel obedience to the law in a particular case); *City of Dallas v. Moreau,* 697 S.W.2d 472, 474 (Tex.App.—Dallas 1985, no writ) (authority must have the power and duty to change the problem reported). The letter to the Commissioners' Court is well within that definition.

[43]*Roberts v. Wal-mart Stores, Inc.,* 7 F.3d 1256, 1258 (5th Cir.1993).

16

"ignore technical imperfections".[44]  In spite of that deference, we will reverse if we conclude that the trial court erred with respect to the instructions proffered to the jury and that, based upon the record, the error affected the outcome of the case.  In other words, does the charge "as a whole leave[ ] us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations"?[45]  We have that doubt here.

Although he was addressing a whistle blower cause of action in the private sector, Justice Doggett understood the need for a strong causation element:  "The reporting of these activities must have been the principal reason for the employer's retaliation."[46]  Significantly, Justice Doggett added, "The employer may refute the causation element by proving dismissal for reasons other than the act of whistle blowing."[47]  The instructions should have communicated this to the jury.

The court's instructions provided, in part:

> You are instructed that, in order to recover under this statute, the Plaintiff must prove by a preponderance of the evidence that:

1. He was discharged;

2. He was discharged after reporting violations of the law and because he made such a report;

---

[44]*Bender v. Brumley,* 1 F.3d 271, 277 (5th Cir.1993).

[45]*Id.* (quoting *Kyzar v. Vale Do Ri Doce Navegacai, S.A.,* 464 F.2d 285, 290 (5th Cir.1972), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973)).

[46]*Winters,* 795 S.W.2d at 732 (Doggett, J. concurring).

[47]*Id.* at 733.

17

3. His report was made in good faith;

4. The acts of the District Attorney of Ector County were a proximate cause of any damages sustained by the Plaintiff; and

5. The plaintiff suffered actual damages.

The second element focusses on causation (i.e., why Davis was fired). The defendants charge that the court erred when it failed to give an instruction that, if the District Attorney fired Davis for insubordination, the jury must find for the defendants.[48] We agree.

The phrase "He was discharged ... because he made such a report" is susceptible of two meanings. First, it could mean that Davis was fired because he brought facts to light in a report—facts that the District Attorney would have preferred to keep from the public. Under that construction, a jury properly could find that the Whistle Blower Act had been violated.

But the phrase has another meaning and, in the case at hand, a likely one. It could mean that Davis was fired because he made a report; i.e., for insubordination in defying the orders to stay clear of the Sheriff's office. Under this probable construction, a jury could not award damages under the Whistle Blower Act because the District Attorney's objection would not have been to the content of the letter (i.e., reporting a violation), but that, by

---

[48]We note that the defendants properly objected to the trial court's jury instructions and proffered a proposed instruction which would have cured the assigned error. *See F.D.I.C. v. Mijalis,* 15 F.3d 1314, 1318 (5th Cir.1994) (defendants must show "as a threshold matter that the proposed instruction correctly stated the law").

18

writing a letter, Davis risked involving the District Attorney's office in his wife's lawsuit. From the District Attorney's perspective, it might be merely fortuitous that the letter reported a violation of the law.[49]

In the *Knowlton* case, the district court gave jury instructions that avoided this error. After instructing the jury on the elements of a Whistle Blower claim, the court instructed the jury:

> The defendant may rebut this presumption by offering evidence and proving the defendant fired such plaintiff for a nondiscriminatory reason.[50]

That is precisely the instruction that should have been given here.[51]

Davis makes the broad assertion that, if the speech in

---

[49]For example, had Davis not referred to his wife's case but, out of antagonism, written a derisive letter intending to insult the Sheriff's office, the District Attorney might have taken precisely the same course of action—discharging Davis—for precisely the same reason, insubordination and disobedience to departmental orders. The content of the report at all times would have been immaterial, even if Davis by chance reported a violation.

[50]*Knowlton,* 957 F.2d at 1179.

[51]We do not hold that this instruction need be given in every Whistle Blower Act case. Where the facts of the case to not compel the often fine distinctions between conduct that would and conduct that would not support a cause of action, the court's instruction would suffice. *See Texas Dept. of Human Services v. Green,* 855 S.W.2d 136, 150 (Tex.App.—Austin 1993, error denied) (the instruction "[D]id Defendants retaliate against Plaintiff for reporting ... violations of law?" sufficiently instructed jury on necessary causal link). Here, however, Garrison's admonitions to Davis required that the jury knowingly distinguish between permissible and impermissible reasons for the discharge. The court should have given the *Knowlton* instruction or a similar instruction.

question is protected by the First Amendment, it cannot be insubordination to exercise the right to speak. The issue, however, is whether the defendants's actions violated the Texas Whistle Blower Act. If Davis was discharged for insubordination as opposed to being discharged in retaliation for exercising his protected right to speak, the cause of action would not lie.

Although it is impossible to say whether the jury properly understood the law, we conclude that the instruction that was given prejudiced the defense. It allowed the jury to answer the second element in the affirmative under facts that would not have supported a Whistle Blower Act claim. For that reason, we reverse and remand.[52]

### III.

In accordance with the foregoing, the trial court judgment is AFFIRMED on the First Amendment issues and REVERSED and REMANDED on the Texas Whistle Blower Act issues.[53]

FITZWATER, District Judge, concurring in part and dissenting in part:

I join completely the majority's resolution of plaintiff's First Amendment claim, and therefore concur in part I of its opinion. I also agree with certain portions of the majority's analysis of plaintiff's Texas Whistle Blower Act claim, and

---

[52]In the light of our holding, we do not address the defendants' remaining contention that the district court erred when it submitted the issue of punitive damages to the jury.

[53]We note that the compensatory damages were awarded for the First Amendment violation as well as the Whistle Blower Act claim. Hence, our holding affects only the punitive damages award.

therefore join part II(A) of the opinion. Because I do not agree that the trial court's instruction regarding the causation element of plaintiff's Whistle Blower claim constitutes reversible error, I respectfully dissent from part II(B). I would uphold the Whistle Blower judgment insofar as it awards actual damages, and I would address defendants' contention—unreached by the majority—that the jury's award of punitive damages must be reversed because there is no evidence of the malicious conduct that is necessary to support such a recovery.

I

The majority correctly analyzes the jurisprudence that governs our review of the trial court's instructions. I do not quarrel with its discussion of the applicable law. I am unable, however, to join the conclusion that the trial court's Whistle Blower causation instruction constitutes reversible error.

A

I would hold as a threshold matter that defendants did not comply with the requirement that they submit a proposed instruction that correctly states the law. *See FDIC v. Mijalis,* 15 F.3d 1314, 1318 (5th Cir.1994).

Defendants requested that the trial court give the following instruction "for both the First Amendment and Whistle Blower action," *see* Appellants Br. at 28:

> If you find that the Plaintiff has established each element of his claim, you must then decide whether the Defendant has shown by a preponderance of the evidence that he would have dismissed the Plaintiff for other reasons even if the Plaintiff had not exercised his protected speech activity. If you find that the Defendant would have dismissed the Plaintiff

21

for insubordination, then your verdict should be for the Defendant. If you find for the Plaintiff against the Defendant on their defense, you must then decide the issue of Plaintiff's damages.

*Id.* (quoting requested instruction).

This instruction did not apply uniformly to both claims.[1] By referring in the first sentence to "protected speech activity," the instruction did not correctly state the law applicable to the Whistle Blower claim.

Moreover, assuming that the second and third sentences can be removed from the instruction as a whole and analyzed in isolation, they likewise do not correctly state the law. The second sentence instructs the jury that it should return a verdict for the defendant if the jury finds "that the Defendant *would have dismissed* the Plaintiff for insubordination." (emphasis added). I would hold that this instruction is susceptible of either of these two meanings: that defendant in fact dismissed plaintiff for insubordination (the meaning defendants-appellants give it), or that defendant intended at some point to dismiss plaintiff for insubordination, but instead terminated him on some other basis.

Because the requested instruction is itself ambiguous,[2] I

_____

[1]The majority opinion expressly differentiates between the First Amendment and Whistle Blower claims. *See* --- F.3d at ---- [maj. slip op. at 1393].

[2]This ambiguity apparently arises from defendants' misuse of "would have" as an auxiliary verb form in place of the word "had" in a conditional clause introduced by the word "if." For the second sentence to read as defendants likely intended it, the sentence should have stated, "If you find that the Defendant had dismissed the Plaintiff for insubordination, then your verdict should be for the Defendant."

22

would hold that the trial court did not commit reversible error when it refused to give the instruction to the jury.

B

I also respectfully disagree with the majority's conclusion that the jury could reasonably have interpreted the causation instruction to allow it to find defendants liable merely for reprimanding plaintiff for insubordination rather than for conduct protected by the Texas Whistle Blower Act.

The majority quotes the causation element by inserting ellipses in place of the words "after reporting violations of the law and." *See* --- F.3d at ---- [maj. slip op. at ----]. It then concludes that this edited form of the causation element, which reads, "He was discharged ... because he made such a report," is susceptible of two meanings. *Id.* I would hold that the causation instruction, viewed as a whole, properly guided the jury. Stated in its entirety, the instruction informed the jury that plaintiff was obligated to prove that "He was discharged after reporting violations of the law and because he made such a report." By my light, this instruction correctly advised the jury that plaintiff was required to establish that he was discharged because he reported violations of the law, and not because of other factors, such as insubordination. I would not reverse the jury verdict on the basis of the causation instruction.

C

I likewise do not join the majority's conclusion that the trial court should have given an instruction like the one in

23

*Knowlton v. Greenwood Indep. Sch. Dist.,* 957 F.2d 1172, 1179 (5th Cir.1992). *See* --- F.3d at ---- [maj. slip op. at 1393].

It bears noting, at the outset, that the causation instruction that the majority rejects today is very similar to the one given in *Knowlton.* *See* 957 F.2d at 1179 n. 10 (instructing jury that plaintiff must prove *inter alia* that she was "discharged after reporting a violation of the law and for the reason that she made such a report"). But aside from that, the particular *Knowlton* instruction that the majority would require was neither requested by defendants nor shown to be applicable to the present case.

The majority holds that the trial court should have instructed the jury that

> The defendant *may rebut this presumption* by offering evidence and proving the defendant fired such plaintiff for a nondiscriminatory reason.

--- F.3d at ---- [maj. slip op. at 1393] (quoting *Knowlton,* 957 F.2d at 1179) (emphasis added) (footnote deleted). The words "may rebut this presumption" are significant, because in *Knowlton* the district court also instructed the jury that if the plaintiff met her burden of proof as to all applicable elements, then the jury must *presume* that the plaintiff was discharged or suspended in violation of the Act. *See Knowlton,* 957 F.2d at 1179 n. 10. The instruction that the majority concludes "is precisely the instruction that should have been given here," *see* --- F.3d at ---- [maj. slip op. at 1393], was required in *Knowlton* to counterbalance the directive that the jury presume a violation of the Act. In the present case, however, defendants have not shown that the trial

24

court gave a presumption instruction like the one in *Knowlton.* Accordingly, I respectfully disagree with the conclusion that the trial court committed reversible error in this respect.

II

I concur in parts I and II(A) of the majority opinion, and respectfully dissent from part II(B) and the majority's failure to reach the punitive damages question.  Because I would not reverse the finding of Whistle Blower Act liability, I would reach the merits of defendants' contention that the Whistle Blower punitive damages award is not supported by the necessary evidence of malicious conduct.