UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DIXIE L. MCVEY,

*Plaintiff-Appellant,*

v.

VIRGINIA HIGHLANDS AIRPORT
COMMISSION; KENNETH L. STACY,
Chairman of the Virginia Highlands
Airport Commission, individually
and in his official capacity of
Chairman; RICHARD H. KISER,
Member of Virginia Highlands
Airport Commission, individually
and in his official capacity as
member; JAMES D. VICARS, Member
of Virginia Highlands Airport
Commission, individually and in his
official capacity as member;
THOMAS PHILLIPS, Member of
Virginia Highlands Airport
Commission, individually and in his
official capacity as member; DAVID
C. JOHNSON, Member of Virginia
Highlands Airport Commission,
individually and in his official
capacity as member; DAVID
HAVILAND, Member of Virginia
Highlands Airport Commission,
individually and in his official
capacity as member; F. ELLISON
CONRAD, Member of Virginia
Highlands Airport Commission,

No. 01-2466

individually and in his official capacity as member; Beatrice Hutzler, Member of Virginia Highlands Airport Commission, individually and in her official capacity as member,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
Glen M. Williams, Senior District Judge.
(CA-96-143-1)

Argued: June 4, 2002

Decided: August 15, 2002

Before NIEMEYER, MICHAEL, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion. Judge Michael wrote an opinion concurring in the judgment.

---

**COUNSEL**

**ARGUED:** Thomas Dene, DENE & DENE, P.C., Abingdon, Virginia, for Appellant. Steven Ray Minor, ELLIOTT, LAWSON & POMRENKE, Bristol, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

In a dispute between the Virginia Highlands Airport Commission and its airport manager, Dixie McVey, over how to respond to a freedom of information request submitted by a local newspaper, the Commission terminated McVey's employment. On her claim that the Commission violated her First Amendment rights, the district court entered summary judgment against her, concluding that she did not have a viable First Amendment claim and that the Commission members were protected by qualified immunity. We affirm.

I

Virginia Highlands Airport ("Airport"), a small regional airport located in Washington County, Virginia, is governed by the Virginia Highlands Airport Commission ("Commission"). The Commission is composed of seven appointed members and, at the times relevant to this action, was chaired by Kenneth Stacy. The Commission meets monthly to develop policies and regulations and to review operations. Committees of the Commission also meet from time to time. The Commission delegates the day-to-day operations of the Airport to an airport manager, who, for the period from 1989 until July 1996, was the plaintiff, Dixie McVey.

At its monthly meeting on March 11, 1996, the Commission discussed a handwritten list presented to it of the hangar tenants who were at the time delinquent in their rental payments to the Airport. The parties agree that this list included the name of one of the Airport commissioners. They also agree that the list contained at least one error.

Two days after the meeting, on March 13, 1996, the *Abingdon Virginian*, a local newspaper, submitted a request to the Commission under the Virginia Freedom of Information Act ("FOIA"), requesting the names and addresses of delinquent hangar tenants who were discussed at the March 11 meeting. The newspaper also requested copies of the notice and minutes of all meetings, going back several months.

Finally, it requested documents relating to complaints made to the Commission about the behavior of Richard Kiser, one of the commissioners, and Robert Owen, an Airport employee.

Because the Virginia FOIA law required a response within five days, Chairman Stacy met with McVey shortly after receiving the request for approximately three hours to address the response that should be made. Stacy testified later in his deposition that during that meeting, he instructed McVey to produce as part of the Commission's response the handwritten list of delinquent tenants that had been discussed at the March 11 meeting. He also testified that he instructed McVey not to create documents in order to respond to the request, an instruction that McVey denies having received.

A day after Stacy and McVey met, McVey sent the Commission a long letter, dated March 19, 1996, in which she described the documents that she did and did not have in response to the FOIA request. She included 22 pages of incident reports relating to Kiser and Owen. She also created and included a new list of delinquent tenants' names. And finally she indicated that "[t]he Commission members did not make a public record of [some] meetings" and also that "[t]here were no public notices given by the Commission of [some] Meetings."

Upon receiving McVey's March 19 letter, Stacy became unhappy with her proposed approach and her failure to follow Stacy's instructions, and this unhappiness only aggravated a preexisting concern that Stacy had had about McVey's use of the Airport's fax machine for personal business.

A few days later, on April 5, 1996, McVey wrote Stacy another letter, indicating that she believed that the production of the delinquent tenant list as discussed at the March 11 meeting would violate FOIA because it contained known errors. She wrote further that "I must in all candor inform you that I will not intentionally make a false or misleading response."

The differences between the Commission and McVey over the Commission's response to the FOIA request came to a head on April 8, 1996, when the Commission sent its FOIA response to the newspaper. In its cover letter, the Commission certified the attached packet

as "correct," and all of the commissioners signed the letter, although some commissioners qualified their certification. The Commission asked McVey to sign the certification letter, but she refused. Accordingly, at Stacy's request, she wrote a separate letter, dated April 8, stating that she would not certify all of the documents, but only those she had assembled and presented to the Commission. In particular, she would not certify the accuracy of "documents stamped received April 4, 1996." Those documents were minutes of three Commission committee meetings on February 23, March 3, and March 6, 1996, that had been prepared after the FOIA request was received from the newspaper. Each set of committee meeting minutes, however, was signed by at least two commissioners, and the commissioners uniformly testified that these minutes were accurate. The only change made from what actually occurred was to delete from the March 6 development committee meeting the reference to a complaint made against McVey.

Stacy sent McVey a letter, expressing the Commission's unhappiness with the response she made to the newspaper, as well as with her March 19 letter. Stacy charged McVey with violating her fiduciary duty and wasting public funds in creating documents that Stacy had specifically instructed McVey not to do. The letter also disputed McVey's characterizations of Commission meetings and concluded:

> I, as well as other Commission members, view your recent actions, as pointed out in this letter, as insubordination. This letter is to be placed in your personnel file and these actions will be discussed further with the Airport Commission and at your next annual performance review.

McVey angrily responded to the Commission with a letter dated April 18, 1996, calling the Commission's allegations "misleading and defamatory" and requesting a public apology from the Commission. McVey pointed out the hypocrisy in censuring her for creating an internal document while responding to the FOIA request when other commissioners had created minutes for the February 23 and March 3 committee meetings. McVey concluded her letter as follows:

> It is now very clear to me that Mr. Stacy and various members of this Commission are attempting to retaliate against

me for my effort to accurately supply the information requested by the Abingdon Virginian and my refusal to acquiesce in an attempt to drive-up the expense and level of difficulty of obtaining information from a FOIA request. I will not stand for this. Short of a public apology from each member of the Virginia Highlands Airport Commission who voted to publish the April 8, 1996 letter and its expungement from all records, I will seek the full measure of redress available to me.

Upon receiving this letter, the Commission suspended McVey, "pending investigation of conduct which may be cause for disciplinary action" and, at its July 15 meeting, voted to give McVey formal notice that the Commission was considering termination of her employment. In the Commission's letter giving McVey notice of its action, the Commission described in detail the charges against McVey, including insubordination, the giving of misleading statements to the Commission and the public, the misuse of Commission property, unsatisfactory performance, conflict of interest, behavior which disrupted the orderly transaction of Commission meetings, and incompetence and inefficiency.

After McVey refused to appear for a pre-termination hearing, the Commission terminated her employment, on July 31, 1996.

McVey commenced this action against the Commission and its members, alleging, in several counts, a First-Amendment violation, denial of due process, defamation, and wrongful discharge. She demanded $750,000 in compensatory damages and $350,000 in punitive damages, as well as expungement of her personnel file and reinstatement. On the defendants' motion, the district court dismissed all claims except McVey's First Amendment claim, and it refused to rule on the defendants' claim of qualified immunity until the record had been developed further. From this ruling, the defendants filed an interlocutory appeal. We affirmed the district court and remanded the case for further proceedings to develop the record on qualified immunity. *McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998).

On remand and after discovery, the parties submitted cross-motions for summary judgment. The district court granted the defendants'

motion on all remaining counts, dismissing the First Amendment claim with prejudice and the state law claims without prejudice. The court also concluded that the defendants were entitled to qualified immunity.

This appeal followed, challenging the district court's ruling on the First Amendment claim.

II

In determining whether the defendants were protected from McVey's First Amendment claims by qualified immunity, we must first determine "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If a violation is established by the existing facts, then we must determine whether the right was "clearly established." *Id.* This two-step approach permits courts to "elaborate the constitutional right with greater degrees of specificity." *Id.* at 207.

McVey claims that she was "discharged for refusing to certify the correctness of documents the [Commission] submitted to a newspaper in response to a FOIA request and for explaining her reasons for so refusing in [her April 8] letter to the newspaper," in violation of the First Amendment. In *Pickering v. Board of Education*, 391 U.S. 563, 574 (1968), which sets forth the requirements of a First Amendment claim, the Court held that a government employee's "exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." To establish a First Amendment claim on this basis, a public employee must demonstrate that "(1) the [employee] speaks as a citizen about matters of public concern and (2) the [employee's] interest in exercising free speech is not outweighed by the countervailing interest of the state in providing the public service the [employee] was hired to provide," and (3) "protected speech played a 'substantial' role in the termination decision or was 'a motivating factor.'" *Stroman v. Colleton County Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992) (citation omitted).

To satisfy the first prong that her employment was terminated for speaking as a citizen on a matter of public concern, McVey argues

that her April 8 letter to the newspaper fulfilled that requirement. In that letter, she stated:

> With regard to the package of information submitted to you in response to the referenced request, please be advised that I do not "certify" in any way to some documents included in that package. The documents in the package were compiled partially from Airport Commission records and partially from documents submitted to me by Members of the Airport Commission on April 4, 1996 and stamped received on that date. I can only verify the documents which were assembled and presented to the Virginia Highlands Airport Commission for their review in order to respond to your request, which documents did not include those documents stamped received April 4, 1996.

The documents date-stamped April 4 were in fact minutes from the three recent committee meetings that McVey did not attend and that were prepared by commissioners after the Commission received the FOIA request. Because McVey did not see these documents before April 4, she somehow suspected that something was untoward or inaccurate about them.

While this innuendo is implied in McVey's April 8 letter, her actual statement to the newspaper seeks more to protect herself from exposure from anything untoward that the Commission may have done. Regardless of her motive, McVey has not been able to present any evidence that the minutes were inaccurate or that their creation was in any way illegal. Indeed, the only evidence presented to the district court was by commissioners who testified that the minutes were accurate. Moreover, while the committee meeting minutes were prepared after the newspaper's March 13 FOIA request, they documented very recent committee meetings dated February 23, March 3, and March 6, occurring within 30 days before the request. McVey offers no legal authority to support her claim that minutes may not be prepared within weeks after a meeting is held and that minutes prepared in that time frame would be untimely or illegal.

Accordingly, McVey's letter of April 8 could not be aimed at exposing any illegality in the public sector. Rather, it was, at most,

crafted to protect her reputation or lessening her risk as a manager in the public sector, based on a suspicion of wrongdoing. Thus, by writing such a letter, McVey is not speaking as a citizen on a matter of public concern, but as manager on behalf of the Commission, and in so speaking as a manger she separated herself from the Commission's approach without any legal justification for doing so.

Matters of public concern protected by the First Amendment do not include "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest." *Stroman*, 981 F.2d at 156. In *Connick v. Myers*, 461 U.S. 138, 146 (1983), the Court looked to whether speech "relat[ed] to any matter of political, social, or other concern to the community." The Court in *Connick* concluded that because the speech did "not seek to bring to light *actual or potential wrongdoing or breach of public trust*" in the office, it was not of public concern. *Id.* at 148 (emphasis added).

So too in this case, McVey could not and has not attempted to demonstrate that the minutes from the committee meetings in late February and early March 1996 were in any way inaccurate or untoward and therefore she failed to establish the first prong of her claim that she was speaking "as a citizen about matters of public concern." *Stroman*, 981 F.2d at 156. On the contrary, she appeared to be speaking on a matter of personal concern to protect her personal stature.

McVey has failed also to satisfy the second prong of the *Stroman* test — whether the employee's interest in free speech outweighs that of the government in providing efficient services. 981 F.2d at 156. This question focuses on the disruption — or potential disruption — of government services because of the speech. *Connick*, 461 U.S. at 151.

While McVey suggests that she had a legitimate interest in publishing unlawful actions, she has not advanced any unlawfulness in either the timely preparation or the substance of the minutes prepared by commissioners for the three committee meetings in question. As a consequence, her efforts to bring disrepute to the Commission by distancing herself from it was based on groundless suspicions and created public disruption.

As we indicated in our earlier opinion, "a public employee who has a confidential, policymaking, or public contact role and speaks out in a manner that interferes with or undermines the operation of the agency, its mission, or its public confidence, enjoys substantially less First Amendment protection than does a lower level employer." *McVey*, 157 F.3d at 278. McVey certainly had a "confidential, policy-making" role at the Airport as its highest ranking operations employee. In this context, we conclude that the Commission's interest in public confidence and institutional harmony clearly outweighs any interest she may have had in venting her unfounded suspicions. McVey, as the highest ranking Airport official with nearly complete control over its day-to-day operations and confidential information, must have a productive and harmonious working relationship with the Commission. Because the Commission reasonably believed that McVey's actions concerning the FOIA request permanently disrupted this relationship, it was justified in terminating her employment as the highest ranking operations officer.

### III

Because we conclude that McVey has failed to demonstrate at least two of the necessary elements for establishing a First Amendment claim, we need not reach the second inquiry under qualified immunity — whether her constitutional right was "clearly established." But we note in passing that in *Cromer v. Brown*, 88 F.3d 1315, 1326 (4th Cir. 1996), we explained that "only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply and not yet well-defined." (internal quotation marks and citation omitted). Thus, even if McVey had demonstrated a valid First Amendment claim, she would have still faced the perhaps insurmountable obstacle of proving that her right, deriving from the complex application of the *Stroman* test, was clearly established in the factual circumstances of this case.

Accordingly, we affirm the judgment of the district court.

*AFFIRMED*

MICHAEL, Circuit Judge, concurring in the judgment:

Unlike the majority, I believe that McVey's First Amendment rights were violated. Nevertheless, I would grant qualified immunity to the defendants because their conduct did not violate clearly established rights of which a reasonable official would have known. According, I concur in the judgment.

In order for McVey to survive summary judgment on her claim of retaliatory discharge, the following factors must be present: (1) she spoke as a citizen upon a matter of public concern; (2) her interest in her speech outweighs the Airport Commission's interest in providing effective and efficient services to the public; and (3) there is a genuine issue of material fact as to whether her speech was a substantial factor in her termination. The crux of the majority's conclusion is that McVey's speech does not touch on matters of public concern because she fails to proffer sufficient evidence of any official misconduct and because McVey was motivated more by her self-interest as an employee than by her interest as a citizen in a matter of public concern. This conclusion means that McVey not only fails to establish the first factor, but she also loses on the balancing test of the second factor. I respectfully disagree with the majority's First Amendment analysis.

An employee's speech touches upon a matter of public concern if it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). We have said that "[t]he focus is . . . upon whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee." *Berger v. Battaglia*, 779 F.2d 992, 999 (4th Cir. 1985) (internal quotations omitted). In other words, "would a member of the community be truly concerned with the employee's speech?" *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 353 (4th Cir. 2000). In performing the public interest inquiry, we must examine the content, form, and context of a given statement, as revealed by the whole record. *Connick*, 461 U.S. at 147-148.

The content of McVey's speech may be fairly characterized as "seek[ing] to bring to light actual or potential wrongdoing or breach

of public trust" on the part of the Airport Commission. *Id.* at 148. Her speech — her refusal to certify the correctness of certain minutes in the FOIA package and her separate cover letter documenting this refusal — draws attention to possible irregularities in the Airport Commission's FOIA response. Whether or not a public agency has complied with the law is obviously of interest to the community. Indeed, "[t]here is perhaps no subset of 'matters of public concern' more important than bringing official misconduct to light." *Davis v. Ector County*, 40 F.3d 777, 782 (5th Cir. 1995) (footnote omitted). *See also Chappel v. Montgomery County Fire Prot. Dist. No. 1*, 131 F.3d 564, 576 (6th Cir. 1997) (citation omitted) ("[P]ublic interest is near its zenith when ensuring that public organizations are being operated in accordance with the law.").

The form and context of McVey's speech support this conclusion. Her expression was in the form of a signed statement to a local newspaper, made in response to the paper's request for public information. Questionable activity surrounding the FOIA request provided the context. According to McVey, Kenneth Stacy, chairman of the Commission, had improperly told her to delay responding to the FOIA request in order to buy time. Furthermore, Stacy and other Commissioners generated minutes for commission meetings after the FOIA request, and these meetings had not been open as required by law. Virginia Freedom of Information Act, Va. Code Ann. § 2.2-3707(C) (Michie 2001). As airport manager and custodian of the records, McVey is in the best position to know about possible improprieties in the airport's public recordkeeping, and "[t]he Supreme Court has said that it is essential to protect the rights of persons having special knowledge . . . to speak on an issue of public concern." *Korb v. Lehman*, 919 F.2d 243, 247 (4th Cir. 1990) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 572 (1968)).

The majority acknowledges the whistleblowing implicit in McVey's speech, but tries to brush it aside as merely an attempt to protect herself in the event of any wrongdoing. That may be one possible reading. However, we are reviewing a grant of summary judgment for the Airport Commission, and we are therefore obliged to read the facts and draw inferences in the light most favorable to McVey. Had the majority followed this basic summary judgment principle, it surely would have concluded that McVey refused to

endorse the accuracy of the FOIA response not because she was worried about her professional reputation, but because she wanted to alert the public to possible misconduct by her agency.

In any case, speech can address issues of public concern even if it is partly motivated by self-interest. *See, e.g.*, *Davis*, 40 F.3d at 783 n.21 (citation omitted) ("[A]n element of personal interest on the part of an employee in the speech does not prevent a finding that the speech as a whole raises issues of public concern."); *Gustafson v. Jones*, 290 F.3d 895, 908 (7th Cir. 2002)(same). After all, in *Connick* the plaintiff's speech, a questionnaire, was motivated by a personal grievance (about an unwanted job transfer), yet that did not automatically remove the speech from the scope of public concern. *Connick*, 461 U.S. at 140-41, 149. "[T]he argument that an individual's *personal* motives for speaking may dispositively determine whether that individual's speech addresses a matter of *public* concern is plainly illogical and contrary to the broader purposes of the First Amendment. . . . [T]he First Amendment is concerned not only with a speaker's interest in speaking, but also with the public's interest in receiving information." *Chappel*, 131 F.3d at 574.

The majority next argues that McVey's speech does not touch on matters of public import because she "has not been able to present any evidence that the minutes were inaccurate or that their creation was in any way illegal." *Ante* at 8. However, allegations of wrongdoing need not be proven to merit First Amendment protection. "A public employee is not required to prove the truth of his speech in order to secure the protections of the First Amendment." *Chappel*, 131 F.3d at 576. On the contrary, we have held that the truth or falsity of an allegation is irrelevant: plaintiffs need not "offer any evidence of the truth of their criticisms and, likewise the defendants had no right to seek to prove the falsity of the criticisms. The question was simply one of law whether the statements, *irrespective of their truth or falsity*, raised a 'matter of public concern.'" *Buschi v. Kirven*, 775 F.2d 1240, 1248 (4th Cir. 1985) (internal quotations omitted). In fact, the Supreme Court has held that a public employee's exercise of her right to speak out is protected "absent proof of false statements knowingly or recklessly made." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968). In any event, McVey has proffered evidence of improper behavior. She has put into the record the actual minutes from the

development committee meeting of March 6, 1996, and the newly minted minutes of that meeting submitted in response to the FOIA request. They are not the same. McVey has also pointed to the testimony of James D. Vicars, one of the commissioners who attended the meeting. Vicars admitted in his deposition that information was intentionally left out of the minutes:

> Q:   Is Exhibit 13 misleading because it omits information?
>
> A:   By design it is, yes.
>
> Q:   Are you saying it was intentionally misleading?
>
> A:   Yes, sir.

By improperly viewing the facts in the light most favorable to the Airport Commission, the majority discounts the omissions as minor ones. The point is, however, that the Commission falsified the minutes, which means that the Commissioners who vouched for the accuracy of those minutes misled the public.

The majority's erroneous conclusion that McVey's speech did not touch upon a matter of public concern also carried over into its balancing inquiry. "That inquiry was thus tainted from the outset by this threshold legal error." *Jackson v. Bair*, 851 F.2d 714, 721 (4th Cir. 1988). To start, the majority fails to give proper weight to McVey's interest and the public's interest in her speech. The majority then compounds this error by giving too much weight to the Airport Commission's interests. The majority states that McVey had a "confidential policymaking" role and therefore her speech was entitled to less protection. Here, the majority once again fails to consider the facts in the light most favorable to McVey. She insists that she had no policymaking authority, and her job description supports her. Even if McVey was a policymaker, this would make little difference in the context of this case. "Although a high-level policymaker enjoys little First Amendment protection for her statements about her government employee's policy, the balance may be different for her statements preventing or exposing government wrongdoing." *McVey v. Stacy*, 157 F.3d 271, 281 (4th Cir. 1998) (Murnaghan, J., concurring). In

addition, when the speech implicates government wrongdoing, a showing of potential disruption does not suffice to trump the speech: "If McVey's speech were intended to prevent or disclose the illegal actions of her government-employer, her interest in that speech, which encompasses the public's interest, would be compelling, and a very strong showing of disruption of legitimate government functions would be required to overcome it." *Id.* The Commissioners, who bear the burden of proving disruption, *see Jackson*, 851 F.2d at 718, have not pointed to any actual disruption in the running of the airport, and they have not cited any instances of inconvenience to the public. While the working relationship between McVey and the Commission may have deteriorated, this inevitable byproduct of whistleblowing should not count against McVey. *See, e.g.*, *McVey*, 157 F.3d at 282 (Murnaghan, J., concurring); *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 748 (9th Cir. 2001).

In short, McVey has presented a valid First Amendment retaliation claim.* Nonetheless, the Airport Commissioners are entitled to qualified immunity unless they transgressed a bright line. "[I]n First Amendment cases, where a sophisticated balancing of interests is required to determine whether the plaintiff's constitutional rights have been violated, 'only infrequently will it be "clearly established" that a public employee's speech on a matter of public concern is constitutionally protected.'" *McVey*, 157 F.3d at 277 (quoting *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995)). I concur in the judgment only because I do not believe that this is one of those infrequent cases.

---

*The third (causation) factor for McVey's First Amendment retaliation claim is also satisfied because she has raised factual issues about every single reason listed in her Notice of Contemplated Termination.