David CASTANEDA, Appellant,

v.

TEXAS DEPARTMENT OF
AGRICULTURE,
Appellee.

No. 13–91–376–CV.

Court of Appeals of Texas,
Corpus Christi.

May 21, 1992.

Rehearing Overruled June 25, 1992.

William J. Kolb, Corpus Christi, for appellant.

Suzanne Formby Marshall, Asst. Atty. Gen., Tammy L. Stroud, Asst. Atty. Gen., Gen. Litigation Div., Austin, for appellee.

Before GILBERTO HINOJOSA, KENNEDY, and SEERDEN, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Appellant, David Castaneda, a former employee of the Texas Department of Agriculture, appeals from entry of summary judgment in a wrongful discharge action based on TEX.REV.CIV.STAT.ANN. art. 6252–16a (Vernon 1983) (The Whistle Blower's Act). We reverse and remand.

The plaintiff's (appellant's) petition alleged that the Department employed Castaneda from September 15, 1981, to February 28, 1988. When he left employment with the Department he worked as a grain elevator inspector. The Department sent a letter informing him that he was terminated due to budgetary cutbacks. Appellant alleged that he was terminated because he made a good faith report of a violation of the law to an appropriate law enforcement agency.

The undisputed summary judgment evidence showed that before his termination appellant discussed several possible legal violations occurring in the Department's office in which he worked. This discussion, which occurred over the phone, followed after a request for information from Dan Ruiz and Nora Linares. Ruiz was the Department's Assistant Commissioner for Field Operations and Linares was the Special Assistant to the Deputy Commissioner. The violations he reported included the promotion of employees based on political in-

volvement rather than on merit, the use of State postage to mail "Mexican American Democrat junk mail," and the use of State funds to carry out an affair between the supervisor of the San Juan Office, Rudy Garcia, and another employee, Terry Pesquera. As a result of the discussion remedial measures were taken at the Department's Office.

The Department filed a motion for summary judgment. It set forth four grounds for summary judgment: 1) the plaintiff did not initiate a report; 2) a report was not made to an "appropriate law enforcement authority;" 3) the plaintiff did not report a "violation of the law;" and 4) the report did not cause the discharge. The motion was granted.

### STANDARD OF REVIEW

In assessing the propriety of a motion for summary judgment, this Court and the trial court apply essentially the same standard. The issue is whether the movant's written motion for summary judgment and supporting evidence establish as a matter of law its right to judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); Tex.R.Civ.P. 166a. The evidence, any doubt, and all reasonable inferences must be indulged in the nonmovant's favor. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867 (Tex.1984).

### ANALYSIS

■ Article 6252–16a has a remedial purpose. It is designed to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing. *See Travis County v. Colunga*, 753 S.W.2d 716, 718–19 (Tex.App.—Austin 1988, writ denied). Accordingly, we construe this statute liberally, and in accordance with its remedial purpose. *See Burch v. City of San Antonio*, 518 S.W.2d 540, 544 (Tex.1975) (remedial statutes shall be given the most comprehensive and liberal construction possible); *Braugh v. Corpus Christi Bank & Trust*, 605 S.W.2d 691, 696–97 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *see Lastor v. City of*

*Hearne*, 810 S.W.2d 742, 744 (Tex.App.—Waco 1991, writ denied); *but see City of Ingleside v. Kneuper*, 768 S.W.2d 451, 457 (Tex.App.—Austin 1989, writ denied) (construing the punitive damage aspect of the act strictly).

■ The Department's first argument for sustaining the summary judgment is that the evidence showed he did not initiate a report. It argues that no reported case has provided relief without an initiation of a report. This argument is twofold. The first part is the argument that "initiation" is an element of the cause of action. The second part is that appellant failed to make a "report."

The Whistle Blower's Act provides:

> A state or local governmental body may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who reports a violation of law to an appropriate law enforcement authority if the employee report is made in good faith.

Tex.Rev.Civ.Stat.Ann. art. 6252–16a (Vernon 1983). The statutory language contains no requirement that an employee "initiate" a report in the statutory language. The statute provides protections for an employee who "reports" a violation of the law.

■ We interpret this statute liberally to achieve its remedial purpose. *Burch*, 518 S.W.2d at 544; *Braugh*, 605 S.W.2d at 696–97. A liberal construction does not restrict the statute, but enlarges its scope and effect to effectuate the true legislative purpose. We therefore decline to engraft onto this statute the additional requirement that the whistle blower "initiate" a report.

■ The Department also argues that appellant did not make a "report." The summary judgment evidence shows that Ruiz and Linares contacted appellant over the phone. During this conversation he disclosed to them that he thought several violations of the law had occurred.

■ In interpreting the phrase "reports a violation of the law," we interpret this phrase to include any disclosure of information regarding a public servant's em-

ployer tending to directly or circumstantially prove the substance of a violation of criminal or civil law, the State or Federal Constitution, statutes, administrative rules or regulations.[1] Appellant's conversation with Ruiz and Linares meets this test.

■ Appellee also argues that there was no report because he merely disclosed rumors and innuendo to Ruiz and Linares, and he had no personal knowledge of the alleged legal violations. A similar issue was discussed in *Lastor*, 810 S.W.2d at 743–44. *Lastor* resolved the question whether the Act protects an employee who believes and reports in good faith that a violation has occurred, but is wrong about the legal effect of the facts, and is later discharged. The court held that the employee could seek relief despite the fact that an investigation revealed that technically no legal violation had occurred. *Id.* at 744. The issue in *Lastor* was whether the employee held a good faith belief that a legal violation occurred.

Similarly, in this case appellees have not disproven as a matter of law the proposition that appellant did not hold a good faith belief that a legal violation had occurred. Rather, the evidence showed that appellant disclosed what may have been legal violations. The basis of his knowledge was hearsay; however, no evidence showed that he believed these facts were false or that he believed they did not constitute a legal violation. We hold appellee failed to disprove as a matter of law that appellant reported a violation of the law in good faith within the meaning of the statute.

■ The Department next argues that Ruiz and Linares were not appropriate law enforcement authorities. Two reported decisions have discussed and defined this term. In *City of Dallas v. Moreau*, 697 S.W.2d 472 (Tex.App.—Dallas 1985, no writ), the court wrote:

> We hold that, in order to be "appropriate," the authority to whom the report is given must have the power and the duty under the law to decide disputes concern-

ing the lawfulness of the matter being reported, the power to legislate or regulate with respect thereto, or the power to arrest, prosecute or otherwise discipline on account of an alleged violation being reported.

*Id.* at 474. In *Colunga* the court defined this term slightly differently:

> We hold that "an appropriate law enforcement authority," includes at minimum *any* public authority having the power and duty of inquiring into the lawfulness of the questioned conduct and causing its cessation if the conduct appears to be a violation of the law.

*Id.* 753 S.W.2d at 719–720; *see also City of Houston v. Leach*, 819 S.W.2d 185, 197–98 (Tex.App.—Houston [14th Dist.] 1991, no writ). After careful consideration, we have synthesized these and other principles, and define "appropriate law enforcement authority" as any entity with the capacity through legal processes or otherwise to take remedial action with respect to the alleged violation. We recognize that this definition includes regulatory agencies, authorities within the public servant's agency, and others who are not "law enforcement authorities" in the traditional sense. However, this interpretation is necessary to realize this statute's remedial purpose: to foster governmental compliance with the law.

■ The evidence showed that Ruiz was the Department's Assistant Commissioner for Field Operations and Linares was the Special Assistant to the Deputy Commissioner, both positions of authority within the Department. Ruiz testified by deposition that he was responsible for the offices under investigation, and that he had authority to investigate and resolve the issues. We hold that the question whether a particular party is an "appropriate law enforcement authority" is a question of fact, and under the proper definition, this is "some evidence" that Ruiz was an "appropriate law enforcement authority." The Department has failed to disprove as a

---

1. Article 6252–16a defines "Law" as "a state or federal statute, an ordinance passed by a local governmental body, or a rule adopted under a statute or ordinance." Tex.Rev.Civ.Stat.Ann. art. 6252–16a, § 1(1) (Vernon 1983).

matter of law the proposition that either Ruiz or Linares was an appropriate law enforcement authority.

The Department next argues that appellee failed to report a violation of the law. The evidence showed that appellant disclosed to Ruiz and Linares several potential violations of the law. For example, he stated that promotions were given based on political involvement rather than merit. He also stated that "Mexican American Democrat junk mail," was being distributed by postage paid by the State. In addition, he disclosed apparent wrongdoing possibly involving State funds concerning two State employees in the same office.

We have defined above the phrase "violation of the law" to include any disclosure of information tending to directly or circumstantially prove a violation of the law. The evidence showed that elements of several offenses and civil claims were alleged, arguably including a violation of the First Amendment and TEX.PENAL CODE ANN. § 39.01(a)(2) (Vernon 1983) (it is an offense for a public servant to misapply any thing of value belonging to the government ...). We hold that the Department failed to establish as a matter of law that appellant did not report a violation of the law.

The Department's final argument for affirming this summary judgment is that there was no causal connection between appellant's termination and the report. The Department's summary judgment evidence indicated that budget reductions and appellant's back injury were the cause of his firing. However, the evidence also showed that appellant was fired and the parties he informed on were promoted. Moreover, the evidence showed that his on the job performance was as good or better than others who were kept on the job.

■ Often in employment discrimination cases, direct evidence of improper discrimination is absent, particularly at summary judgment. The Department provided direct evidence in the form of a memo detailing, paragraph by paragraph, the Department's grievances against appellant. This memo substantiated the Department's theory that it did not discharge appellant for whistle blowing. The memo was written by Mattie Mauldin Taylor, appellant's supervisor.

We recognize that summary judgment may be based on the testimonial evidence of "an interested witness, ... if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, *and could have been readily controverted."* TEX.R.CIV.P. 166a(c). In this respect, civil conspiracy cases are similar to employment disputes.

The rule in civil conspiracy cases is that the element of "agreement" generally may not be disproven as a matter of law merely by statements of alleged co-tortfeasors denying the conspiracy. *Christensen v. Sherwood Ins. Servs.,* 758 S.W.2d 801, 804 (Tex.App.—Texarkana 1988, writ denied); *Bankers Commercial Life Ins. v. Scott,* 631 S.W.2d 228, 231 (Tex.App.—Tyler 1982, writ ref'd n.r.e.); *American Petrofina v. Crump Business Forms, Inc.,* 597 S.W.2d 467, 471 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.).

We believe that rule applies in the instant case to statements from the Department because its witness was interested, and the issue of causation, like the issue of agreement in civil conspiracy cases, is not readily controvertible.

In the instant case there was, however, controverting circumstantial evidence raising an inference that Castaneda was discharged for whistle blowing and in retaliation for the remedial measures that were required. We must construe this evidence in the light most favorable to appellant. Accordingly, we hold that the Department failed to prove as a matter of law that there was no causal link between the discharge and the report.

Appellant's sole point of error is sustained. We reverse the trial court's judgment and remand to the trial court for further proceedings.