In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-138 CV


____________________



THE BURKE CENTER FOR MHMR, Appellant



V.



MAXINE CARR, AS GUARDIAN OF THE PERSON OF JOHN DOE, AN

INCAPACITATED ADULT PERSON AND JOHN DOE, INDIVIDUALLY, Appellees





On Appeal from the 258th District Court


Polk County, Texas


Trial Court Cause No. CIV20978






MEMORANDUM OPINION



 This is an interlocutory appeal by The Burke Center for MHMR from a denial of
a plea to the jurisdiction over a claim asserted under the Whistleblower Act. See Tex.
Civ. Prac. & Rem. Code § 51.014(a)(8) (Vernon Supp. 2005). K.S. was a client of the
Center, a unit of local government. See Tex. Health & Safety Code Ann. § 534.001
(Vernon Supp. 2005). He also worked at the Center's New Directions Industries (NDI)
service center. A.W., a registered sex offender on probation for sexual assault, was also
a client of the Center, and, like K.S., was assigned to work at NDI. 

 In their original petition, plaintiffs made the following allegations: on October 9,
2001, A.W. sexually assaulted K.S. during a work break; K.S. told supervisors that same
day about the assault; a manager at NDI concealed the assault; around Thanksgiving 2001,
K.S. told his mother, Maxine Carr, about the sexual assault; K.S. and his mother reported
the assault to the sheriff's department on December 5, 2001; A.W. was indicted for the
offense; even after K.S. and his mother made the report to the sheriff, A.W. continued
to work for the Center. 

 Both parties agree that no change of conditions in the workplace occurred after K.S.
and his mother reported the assault to the sheriff. The indictment against A.W. for the
sexual assault of K.S. was dismissed on January 21, 2003, because of A.W.'s death. K.S.
continued working at NDI after reporting the assault in December 2001, as well as after
A.W.'s death. 

 On July 10, 2003, plaintiffs' attorney sent a letter to the CEO of the Center. The
letter made the following allegations: the Center employed A.W., a registered sex
offender, without any "rights restrictions or line of sight supervision" while K.S. was
employed at the Center; the Center failed to notify other NDI clients and employees of
A.W.'s employment there; the Center knew of prior inappropriate sexual advances made
by A.W. to other clients and employees; the Center's managers and employees concealed
the sexual assault on K.S.; and the Center failed to take any measures to protect the clients
and employees from sexual assault in the workplace. Based on these assertions that, in
substance, alleged negligent supervision and an attempted cover-up, plaintiffs' attorney
concluded the letter with a demand for a monetary settlement. The letter did not mention 
termination of K.S.'s employment, adverse personnel action against K.S, or retaliation
against K.S. for reporting A.W.'s violation. 

 In a July 25, 2003, response letter, the Center said the alleged injuries were
"unfortunate" and a "cause for serious concern[,]" but the Center was a unit of local
government protected by governmental immunity, and governmental immunity under these
facts was not waived. In an August 1, 2003, letter, (1) plaintiffs' attorney stated the Center's
July 25 letter failed to renounce the cover-up and to set out any measures or safeguards
that would be implemented to protect the health and safety of clients and employees like
K.S. As a result, declared plaintiffs' attorney, the Center's July 25 letter amounted to
written notice of "termination" of K.S. as a Center public employee. Further, plaintiffs'
attorney stated K.S. had to resign because the work conditions were so intolerable that the
Center constructively discharged K.S. The alleged constructive discharge occurred some
nineteen months after the December 2001 report of the sexual assault to law enforcement
authorities and over six months after the alleged perpetrator of the sexual assault died. 
Appellees sued the Center for alleged violations of the Whistleblower Act. 

 Unless the State consents to suit, sovereign immunity deprives a trial court of
subject matter jurisdiction for suits against the State or certain governmental units. See
Texas Dep't of Parks and Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004); Harris
County v. Sykes, 136 S.W.3d 635, 638 (Tex. 2004). The Texas Whistleblower Act
contains an express waiver of immunity from suit and liability: 

 § 554.0035. Waiver of Immunity. 

 A public employee who alleges a violation of this chapter may sue the
employing state or local governmental entity for the relief provided by this
chapter. Sovereign immunity is waived and abolished to the extent of
liability for the relief allowed under this chapter for a violation of this
chapter.


Tex. Gov't Code Ann. § 554.0035 (Vernon 2004). The Act is designed to enhance
openness in government, to compel the government's compliance with the law, and to
protect public employees who report illegal activity. See Wichita County v. Hart, 917
S.W.2d 779, 784 (Tex. 1996); Castaneda v. Texas Dep't of Agriculture, 831 S.W.2d 501,
503 (Tex. App.--Corpus Christi 1992, writ denied). Specifically, the Act prohibits a state
or local governmental entity from suspending, terminating, or taking adverse personnel
action against a public employee who in good faith reports a violation of law by the
employing governmental entity or another public employee to an appropriate law
enforcement authority. See Tex. Gov't Code Ann. § 554.002 (Vernon 2004). 

 The Center does not dispute that K.S. and A.W. were public employees or that a
good faith report of A.W.'s violation of the law was made to an appropriate law
enforcement authority. Rather, the Center contends there was no retaliatory action, no
"adverse personnel action," and no constructive discharge. Appellant argues plaintiffs
have pleaded as a Whistleblower Act claim what is, in reality, a negligence cause of action 
to avoid the retained bar of governmental immunity under the Tort Claims Act. Further,
appellant argues there was no causal nexus between the report to law enforcement and the
alleged constructive discharge. See Texas Dep't of Human Servs. v. Hinds, 904 S.W.2d
629, 636 (Tex. 1995) ("[E]mployee's protected conduct must be such that, without it, the
employer's prohibited conduct would not have occurred when it did.").

 Plaintiffs contend the Center retaliated against K.S. in various ways: by concealing 
K.S.'s sexual assault allegation, by failing to report K.S.'s allegation to appropriate law
enforcement authorities, and by threatening K.S. with physical harm if he told his mother
or any law enforcement officer. However, this conduct occurred before K.S. and his
mother reported the violation and was not in response to the report to law enforcement. 
The crux of appellees' retaliation claim is that after K.S.'s report of the assault, the Center
allowed A.W. to remain a client and employee without any restrictions, and the Center
thereby constructively discharged K.S. on July 25, 2003 (or at least by August 1, 2003). 
Plaintiffs also pled that K.S.'s silence about the assault was a condition of his employment
with the Center, and that K.S. was in constant fear for his life and safety from October 9,
2001, to at least January 23, 2002. Under these pleadings, plaintiffs argue the trial court
had jurisdiction over the claim under the Whistleblower Act. 

 The determination of whether a court has subject matter jurisdiction is a question
of law. See Miranda, 133 S.W.3d at 226. The determination of whether a party has pled
facts that affirmatively demonstrate a trial court's subject matter jurisdiction is reviewed
de novo. Id. If the pleadings affirmatively negate the existence of jurisdiction, then the
trial court may grant the plea to the jurisdiction without allowing the plaintiffs an
opportunity to amend. Id. at 226-27 (citing County of Cameron v. Brown, 80 S.W.3d 549,
555 (Tex. 2002)). 

 When a plea to the jurisdiction challenges the existence of jurisdictional facts, we
consider relevant evidence submitted by the parties when necessary to resolve the
jurisdictional issues raised. Id., at 227 (citing Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d
547, 555 (Tex. 2000)); Texas Dep't of Criminal Justice v. Miller, 51 S.W.3d 583, 587
(Tex. 2001) (examining pleadings and limited jurisdictional evidence to determine whether
plaintiff affirmatively demonstrated waiver of sovereign immunity). If the relevant
evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial
court rules on the plea to the jurisdiction as a matter of law. See Miranda, 133 S.W.3d
at 228. We indulge every reasonable inference and resolve any doubts in the nonmovant's
favor, and we take as true all evidence favorable to the movant. Id.

 The legislative waiver of immunity under the Whistleblower Act is limited by
sections 554.001 and 554.002, which define the conduct for which immunity from suit and
immunity from liability are waived. See Tex. Gov't Code Ann. §§ 554.001, 554.002
(Vernon 2004). The issue is whether the factual allegations and the evidence submitted by
the parties affirmatively establish or negate the existence of subject matter jurisdiction or
whether, if neither is true, the appellees should be given an opportunity to replead. 

 The Center says the issue is whether plaintiffs alleged a constructive discharge
under the Whistleblower Act, and "whether [KS's] employment with the Center ended
because of Plaintiffs' reporting the alleged assault." Appellees rely on University of Texas
Med. Branch at Galveston v. Hohman, 6 S.W.3d 767, 773 (Tex. App.--Houston [1st Dist.]
1999, pet. dism'd w.o.j.), which held that a public employee may meet the "termination"
requirement of the Whistleblower Act by pleading a constructive discharge. The alleged
violation giving rise to a cause of action under the Act is the constructive discharge itself. 
Id. at 774. Plaintiffs maintain the constructive discharge occurred when the Center's
attorney failed to indicate there would be any implementation of safeguards as protection
from future sexual assault. However, the alleged perpetrator of the sexual assault had been
dead more than six months when this letter was written. Furthermore, the pleadings and
evidence affirmatively negate the existence of any causal link between the report to law
enforcement and the alleged constructive discharge. The pleadings and evidence establish
the Center did nothing in response to the report to law enforcement. If a claim is to be
made against the Center, it is a tort claim of negligence, not a claim of retaliation under
the Whistleblower Act. Appellees do not assert a claim under the Texas Tort Claims Act,
presumably because the allegations do not fit within the limited waiver of immunity under
Section 101.021. See Tex. Civ. Prac. & Rem. Code § 101.021 (Vernon 1997). We hold
the pleadings and evidence affirmatively negate any violation of the Whistleblower Act. 
The jurisdiction of the trial court was not invoked. Issues one and two are sustained. 

 We note the plaintiffs also pled that Tibbets' conduct in concealing the report of the
sexual assault to the police violated sections 7.22, 37.03, 37.10, 38.05, 39.02, 39.03, and
39.06 of the Texas Penal Code. We need not consider these allegations. The Texas Penal
Code does not create private causes of action. See Spurlock v. Johnson, 94 S.W.3d 655,
658 (Tex. App.--San Antonio 2002, no pet.). If appellees are urging a tort claim against
Tibbets or the Center because of these alleged criminal violations, we note there is no
waiver of immunity under the Texas Torts Claims Act for intentional torts. See Tex. Civ.
& Prac. Rem.Code Ann. § 101.057(2) (Vernon 1997). Issue three is sustained.

 We reverse the trial court's denial of the plea to the jurisdiction and dismiss
appellees' petition.

 REVERSED AND RENDERED. 

 PER CURIAM


Submitted on October 14, 2004

Opinion Delivered December 22, 2004


Before McKeithen, C.J., Burgess and Gaultney, JJ.


 

1. Plaintiffs' August 1, 2003, letter is not in the record. The petition describes the
letter's contents, and the Center does not dispute that recitation.