NUMBER 13-10-00083-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

GERTRUD MORENO,                                                                        
Appellant,

 

v.

 

TEXAS A&M
UNIVERSITY-KINGSVILLE,                                       Appellee.

                                                                                                                     
  

 

On appeal from the 105th
District Court 

of Kleberg County,
Texas.

                                                                                                                     


 

OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Perkes 

Opinion by Justice
Rodriguez

 

                Appellant Gertrud Moreno challenges the
plea to the jurisdiction and summary judgment granted in favor of appellee
Texas A&M University-Kingsville (TAMUK) on Moreno's claim for retaliatory
discharge under the Texas Whistleblowers Act.  See Tex. Gov't Code Ann. § 554.002 (West
2004).  By two issues, Moreno argues that the trial court erred in granting
TAMUK's:  (1) motion for summary judgment because Moreno provided sufficient
evidence to support all elements of her whistleblower claim; and (2) plea to
the jurisdiction because her pleadings affirmatively demonstrated
subject-matter jurisdiction.  We reverse and remand.

I. 
Factual Background

 

            Moreno was employed by TAMUK as its Assistant
Vice-President for Finance and Administration and Comptroller.  Her supervisor
was Thomas Saban, TAMUK's Vice-President of Finance and Administration.  In
December 2007, Saban asked Moreno to provide him information on the
out-of-state tuition waiver available to certain TAMUK employees.  Moreno
researched the waiver and provided Saban the information from her research.  In
mid-December 2007, Saban applied for the tuition waiver for his daughter, who
was to attend TAMUK in the spring semester of 2008, and paid tuition for his
daughter at the Texas-resident rate.

            Later in December 2007 and January 2008,
Moreno received inquiries from various TAMUK officials regarding Saban's
eligibility for the waiver.  The waiver applied only to teachers and professors
who were employed at least one-half time with higher education institutions.  See
Tex. Educ. Code. Ann. § 54.059 (West 2006).  Moreno
believed that the waiver was available only to faculty members, but ultimately,
Moreno and the various officials who were questioning Saban's eligibility were
uncertain whether, as Vice-President of Finance and Administration, Saban fell
within that categorization.  Nonetheless, Saban was eventually re-classified as
a faculty member.  However, TAMUK was unable to arrange for Saban to teach any
classes.  

 

At a conference in early February 2008,
Moreno asked officials with the Texas Higher Education Coordinating Board
(THECB) if they could clarify what would qualify an employee for the waiver. 
In response to her question, THECB officials informed Moreno that the work-load
of the employee applying for the waiver must be fifty-percent teaching.  Based
on the THECB's interpretation, Saban did not qualify for the tuition waiver.

When Moreno returned to work after the
conference, she conveyed this information to Saban.  Saban became angry because
he believed the matter had been resolved months before.  He shook his finger in
Moreno's face and asked why she was continuing to involve herself with this
matter instead of focusing on her other work.  Moreno left Saban's office. 
Saban later went to Moreno's office and apologized for his conduct.  Moreno
then informed Saban that she would be reporting the tuition issue to Rumaldo
Juarez, the President of TAMUK, which she did later that day.  Juarez and other
TAMUK officials concluded that Saban was not eligible for the waiver, and Saban
was required to pay the tuition that had been waived under his earlier
application.

On February 29, 2008, Saban, along with
representatives from TAMUK human resources, called Moreno to a conference room
where she was given the choice of voluntarily resigning or being terminated. 
Moreno refused to resign, and Saban terminated her employment.  Moreno was not
given a reason for her termination.  Moreno appealed her termination through
TAMUK's grievance process, alleging that her termination was in retaliation for
reporting the tuition-waiver issue.  Moreno's appeal was investigated by Terisa
Remelius, who, after interviewing numerous witnesses, concluded that Saban had
other legitimate reasons for terminating Moreno's employment and that Moreno's
termination was not retaliatory.

II.  Procedural Background

            Moreno sued TAMUK and Saban, alleging
violations of the Texas Whistleblowers Act and her right to free speech.[1] 
TAMUK filed a plea to the jurisdiction, arguing that Moreno failed to plead and
prove facts sufficient to support the elements of her whistleblower claim and
therefore failed to show a waiver of TAMUK's sovereign immunity.  After
discovery, TAMUK also filed a traditional motion for summary judgment, arguing
that Moreno failed to create a fact issue that she (1) in good faith reported a
violation of law, (2) in good faith made her report to an appropriate law
enforcement authority, and (3) was terminated in retaliation for making a
report.[2] 
Moreno responded to the summary judgment motion, contesting each ground
advanced by TAMUK.[3] 
The trial court granted TAMUK's plea to the jurisdiction and motion for summary
judgment and dismissed Moreno's claims with prejudice.  This appeal followed.

III. 
Standard of Review and Applicable Law

 

            Because
the elements of a whistleblower claim are jurisdictional, a plaintiff must
affirmatively plead facts and, if appropriate, produce evidence demonstrating
those elements to show a waiver of the defendant's sovereign immunity.  State
v. Lueck, 290 S.W.3d 876, 883 (Tex. 2009) (holding that the elements of a
whistleblower claim are jurisdictional facts); Tex. Dep't of Parks & Wildlife
v. Miranda, 133 S.W.3d 217, 225, 227 (Tex. 2004) (holding that "if a
plea to the jurisdiction challenges the existence of jurisdictional facts, we
consider relevant evidence submitted by the parties when necessary to resolve
the jurisdictional issues raised").  If the plaintiff creates a fact issue
with her evidence as to each element, it would be improper to grant the
defendant's plea to the jurisdiction.  See City of Waco v. Lopez, 259
S.W.3d 147, 150 (Tex. 2008) (citing Miranda, 133 S.W.3d at 227-28). 
Similarly, to avoid traditional summary judgment, a whistleblower plaintiff
must create fact issues as to all the challenged elements of her claim.  See
Tex. R. Civ. P. 166a(c).

Our review of Moreno's challenges to
TAMUK's plea to the jurisdiction and summary judgment is therefore one and the
same.  In other words, to both establish waiver of immunity, and accordingly,
subject-matter jurisdiction, and avoid summary judgment, Moreno must have
created a genuine issue of material fact on each of the elements of her
whistleblower action.  See id.; see also Miranda, 133 S.W.3d at
227-28 (holding that, where a plea to the jurisdiction implicates
jurisdictional facts and evidence related to those facts, the plaintiff must
create a genuine issue of material fact to avoid dismissal for lack of
subject-matter jurisdiction).  In deciding whether there is a fact issue, we
consider as true any evidence favorable to the non-movant.  See Llanes v.
Corpus Christi Indep. Sch. Dist., 64 S.W.3d 638, 641 (Tex. App.—Corpus
Christi 2002, pet. denied) (citing Am. Tobacco, Inc. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997)) (other citations omitted); see also Miranda,
133 S.W.3d at 228 (acknowledging that, in the context of a plea to the
jurisdiction, the standard for reviewing evidence of jurisdictional facts
mirrors the standard for reviewing traditional summary judgment evidence). 
Every reasonable inference must be indulged in favor of the non-movant and any
doubts resolved in her favor.  See Llanes, 64 S.W.3d at 641 (citations
omitted); see also Miranda, 133 S.W.3d at 228 (citations omitted).  

            The elements of a whistleblower cause of
action are contained in section 554.002 of the government code:

A state or local
governmental entity may not suspend or terminate the employment of, or take
other adverse personnel action against, a public employee who in good faith
reports a violation of law by the employing governmental entity or another
public employee to an appropriate law enforcement authority.

 

Tex. Gov't Code. Ann. §
554.002(a); see Lueck, 290 S.W.3d 881.  Thus, the elements of a
whistleblower claim are:  (1) that the plaintiff was a public employee, (2)
that the defendant was a state or local governmental entity, (3) that the
plaintiff reported in good faith a violation of law (4) to an appropriate law
enforcement agency, and (5) that the plaintiff's report was the but-for cause
of the defendant's suspending, firing, or otherwise discriminating against the
plaintiff at the time the defendant took that action.  See Tex. Gov't Code. Ann. § 554.002(a); Tex.
Dep't of Human Servs. v. Hinds, 904 S.W.2d 629, 636 (Tex. 1995) (explaining
the causation element); Scott v. Godwin, 147 S.W.3d 609, 621 (Tex. App.—Corpus
Christi 2004, pet. dism'd) (laying out the five elements).

We note that the Whistleblower Act is
designed to enhance openness in government and compel the State's compliance
with law by protecting those who inform authorities of wrongdoing.  Llanes,
64 S.W.3d at 641.  "Because the Act is remedial in nature, it should be
liberally construed to effect its purpose."  City of Houston v.
Levingston, 221 S.W.3d 204, 218 (Tex. App.—Houston [1st Dist.] 2006, no
pet.); Llanes, 64 S.W.3d at 641 (citing Casteneda v. Tex. Dept. of
Agric., 831 S.W.2d 501, 503 (Tex. App.—Corpus Christi 1992, writ denied))
(other citations omitted).  "A liberal construction does not restrict the
statute, but enlarges its scope and effect to effectuate the true legislative
purpose."  Casteneda, 831 S.W.2d at 503.

IV. 
Discussion

 

            The first two elements of Moreno's
whistleblower claim are undisputed—Moreno is a public employee, and TAMUK is a
state governmental entity.  Thus, whether TAMUK should have prevailed in the
trial court depends on whether Moreno raised fact issues regarding the third,
fourth, and fifth elements of her claim.

A.  Reported,
in Good Faith, a Violation of Law

            The third element of Moreno's whistleblower
claim was that she reported, in good faith, a violation of law.  See Tex. Gov't Code. Ann. § 554.002(a).  Moreno
asserts that she has created a fact issue on this element.  We agree.

1.  Law Prohibiting Complained-of Conduct

Although there is no requirement that an
employee identify a specific law when making a report and no requirement that
the employee establish an actual violation of the law, Llanes, 64 S.W.3d
at 642, there must be some law prohibiting the complained-of-conduct to give
rise to a whistleblower claim.  Id. at 642-43 ("[T]o recover under
the Act, an employee must have a good[]faith belief that a law, which in fact
exists, was violated.").  We must therefore determine, as a threshold
matter, whether a law existed that prohibited Saban's complained-of conduct.  

Moreno argues that Saban's obtaining of
the tuition waiver violated the following:  (1) section 54.059 of Texas
Education Code; and (2) rule 21.29 of title 19 of the Texas Administrative Code.[4] 
Section 54.059 provides as follows:

A
teacher or professor of an institution of higher education, and the spouse and
children of such a teacher or professor, are entitled to register in an
institution of higher education by paying the tuition fee and other fees or
charges required for Texas residents without regard to the length of time the
teacher or professor has resided in Texas.  A teacher or professor of an
institution of higher education and the teacher's or professor's family are
entitled to the benefit of this section if the teacher or professor is employed
at least one-half time on a regular monthly salary basis by an institution of
higher education.

 

Tex. Educ. Code. Ann. §
54.059.  Rule 21.29 provides as follows:  

A
nonresident person (including a Citizen, Permanent Resident of the U.S., a
person who is eligible to be a Permanent Resident of the U.S., and an eligible
nonimmigrant) employed as a teacher or professor at least half time on a
regular monthly salary basis (not as hourly employee) by an institution shall
pay resident tuition at any institution in the state and the spouse and
dependent children of the nonresident person shall also pay resident tuition. 

 

See 19 Tex.
Admin Code. § 21.29(2)(A) (2010).  

Relevant to this case, under section
54.059 and rule 21.29, the child of a teacher or professor is entitled to register
in an institution of higher education by paying in-state, or Texas resident,
tuition only if employed at least half-time on a regular monthly salary basis
by an institution of higher education.  If a teacher or professor pays in-state
tuition for his child without complying with this requirement, he or she does
not comply with section 54.059 or rule 21.29.  Here, Moreno alleged that Saban
did not comply with the half-time requirement set out in section 54.059 and
rule 21.29.  We therefore conclude that a law exists which prohibits the
complained-of conduct in this case and gives rise to a whistleblower claim.  See
Llanes, 64 S.W.3d at 642-43; see also Tex. Gov't Code Ann. § 554.001(1) (West 2005) (defining
"law" as a "state or federal statute" or "a rule
adopted under a statute or ordinance"); Casteneda, 831 S.W.2d at
503 (prohibiting the reviewing court from circumscribing the scope of the Act
because we are bound to liberally construe it to effect its remedial purpose). 
Having so concluded, the only remaining question in our analysis of the third
element is whether Moreno created a fact issue that she had a good-faith belief
that Saban violated the law by applying for and receiving the benefits of the
tuition waiver—we conclude that she did.

2.  Good Faith Belief

We analyze good faith using an objective
standard and a subjective standard.  Wichita County v. Hart, 917 S.W.2d
779, 784 (Tex. 1996).  "'Good faith' means that (1) the employee believed
that the conduct reported was a violation of law and (2) the employee's belief
was reasonable in light of the employee's training and experience."  Id. 


It is not disputed that, at the time she
made her report, Moreno subjectively believed that Saban had violated the law. 
See id.  With regard to the objective reasonableness of her
belief, we believe that Moreno produced evidence creating a fact issue.  At a
conference in early February 2008, officials from THECB told Moreno that the
only employees that qualified for the tuition waiver were those whose workload
included a fifty-percent teaching component.  Moreno produced evidence that
Saban did not meet this requirement because TAMUK officials were unable to
arrange for Saban to teach a class.  We note that the evidence also showed
that, prior to Moreno's conference, neither Moreno nor other TAMUK officials
involved in processing the tuition waiver clearly understood the meaning and
applicability of the law with regard to Saban's position.  However, because we
must indulge every reasonable inference favorable to Moreno, we conclude that
an employee with Moreno's training and background could have reasonably relied
on the interpretation of the law provided by THECB in forming her belief about
whether Saban's paying of in-state tuition based on the waiver violated the
law.  See id.; see also Miranda, 133 S.W.3d at 228; Llanes,
64 S.W.3d at 641.

TAMUK contends that "no law had
been violated at the time of Moreno's report" because the semester was
still on-going and "Saban had not yet failed in his teaching
obligations."  Citing State v. Lueck, TAMUK argues that Moreno's
report concerned "only the possibility of a future violation of an
unwritten interpretation of the statute."  See 290 S.W.3d at 885. 
Further, TAMUK argues that Moreno's belief was not in good-faith because the
wording of section 54.059 and rule 21.29 makes it "unclear whether the
waiver applies to part-time employees who also teach . . . or employees who
teach at least 50% of the time," and Moreno's reliance on the
interpretation she received from THECB officials at her conference was not
reasonable.

 

First, TAMUK's reliance on Lueck
is misplaced under the facts of this case.  In Lueck, the plaintiff
pleaded that he "believed and reported in good faith that if the
Department [of Transportation] did not pursue an immediate and positive
resolution to [a demand for payment of a contract,] the Department would
violate federal and state law by failing to remedy non-compliance with the
federal and state reporting requirements."  Id. (internal quotation
marks omitted).  The Lueck Court then held that "[t]his allegation
merely recites Lueck's prediction of a possible regulatory non-compliance"
and that "[s]uch a regulatory non-compliance . . . does not equate to a
violation of law . . . within the meaning of the Whistleblower Act."  Id. 
Here, unlike the plaintiff in Lueck whose report concerned a possible
future violation of federal and state laws, Moreno reported an existing
violation of law.  At the time of Moreno's report, Saban had received the
benefit of the faculty waiver in that he paid the lesser in-state tuition for
his daughter to attend TAMUK in the spring 2008 semester.  We are therefore
unpersuaded that Lueck precludes Moreno's claim.

Second, TAMUK's argument regarding the
clarity of the wording in section 54.059 and rule 21.29 is irrelevant in the
context of Moreno's burden.  Addressing good faith, Moreno was required to
produce evidence creating a fact issue regarding the reasonableness of her
belief that those laws were violated by Saban's conduct.  See Tex. R. Civ. P. 166a(c); Miranda,
133 S.W.3d at 227-28.  A whistleblower plaintiff is not required to establish
that an actual violation of the law occurred.  See Llanes, 64
S.W.3d at 642.  A law must exist that prohibits the complained-of conduct, but
so long as an employee believes and reports in good faith that a violation of
that existing law has occurred, she is still protected by the whistleblower
statute even if she is wrong about the legal effect of the facts.  See id.
at 642-43; Casteneda, 831 S.W.2d at 504.  We have already concluded that
a law exists that prohibits the complained-of conduct in this case.  We further
conclude that Moreno met her burden of creating a fact issue by producing
evidence that THECB—the state agency that promulgated rule 21.29, which is the
administrative companion to section 54.059 of the government code, see
33 Tex. Reg. 3939 (2008) (to be
codified at 19 Tex. Admin. Code §
21.29) (proposed Feb. 29, 2008) (Tex. Higher Educ. Coordinating
Bd.)—interpreted section 54.059 and rule 21.29 to require a fifty-percent
teaching workload.  This is evidence that Moreno had a reasonable basis for
believing that Saban's conduct violated the law.  And it is the reasonableness
of Moreno's belief that is the relevant material fact issue she was required to
create to satisfy the third element of her claim.  

In sum, Moreno produced evidence showing
that she reported, in good faith, a violation of law by Saban.  See Hart,
917 S.W.3d at 784.  Viewing this evidence in the light most favorable to
Moreno, we conclude that she created a fact issue regarding the third element
of her whistleblower claim.  See Tex.
R. Civ. P. 166a(c); Miranda, 133 S.W.3d at 227-28.

B. 
Appropriate Law Enforcement Authority

The fourth
element of Moreno's whistleblower claim was that she made her report, in good
faith, to an appropriate law enforcement authority.  See Tex. Gov't Code. Ann. § 554.002(a). 
Under the Act, "a report is made to an appropriate law enforcement
authority if the authority is part of a state or local government entity . . .
that the employee in good faith believes is authorized to . . . regulate under
or enforce the law alleged to be violated in the report."  Id. §
554.002(b)(1).  Like the third element, the good faith requirement in the
fourth element also involves both subjective and objective components.  Good
faith, in the context of an appropriate law enforcement authority, means that: 
"(1) the employee believed the governmental entity was authorized to . . . regulate
under or enforce the law alleged to be violated in the
report . . . ; and (2) the employee's belief was reasonable
in light of the employee's training and experience."  Tex. Dept. of
Transp. v. Needham, 82 S.W.3d 314, 321 (Tex. 2002).

Moreno claims
that she made her report to THECB officials, Saban, and Juarez.  As with her
third element, it is not disputed that Moreno had a subjective belief that
Juarez, in particular, was authorized to regulate under or enforce the laws
alleged to be violated here.  See id.  With regard to the reasonableness
of her belief that Juarez was an appropriate law enforcement authority, Moreno
produced a TAMU system policy providing for the promulgation of policies to
control "Fraud and Fraudulent Actions."  The policy covered
"illegal, improper, and dishonest acts and/or practices," which the
policy referred to as "'fraud' or fraudulent acts,' 'fraudulent
incidents,' or 'fraudulent practices.'"  The policy stated that, except in
cases of "reportable theft incidents," an employee should report
"suspected fraudulent incidents or practices" to her supervisor, the
"CEO" (i.e., the university president), or the Chief Auditor.  Moreno
also produced evidence that both Juarez and Saban believed that Juarez would
have been the appropriate person to whom a report of a violation of the tuition
waiver should be made.  Michael McKinney, Chancellor of the Texas A&M
University (TAMU) system, similarly testified in his deposition that the
university president would be the appropriate person to whom a violation of the
tuition waiver provision should be reported; McKinney testified that, unless a
report involved theft, the report should stay within the university system. 
Juarez further testified in his deposition that, as President of TAMUK, he is
required to ensure that the university is following laws, rules, and
regulations, including those rules and regulations promulgated by THECB. 
Finally, Moreno produced evidence that, when she made her report to Juarez,
Saban was shortly thereafter required to pay the additional tuition required
for non-resident students.

Citing Needham and other appellate
court opinions, TAMUK contends that Moreno's belief could not have been
reasonable because Juarez's ability to "discipline [his] employees
internally for their conduct is not sufficient to meet the Whistleblower Act's
definition of an appropriate law enforcement authority."  See Needham,
82 S.W.3d at 320; see also City of Houston v. Kallina, 97 S.W.3d at 170,
173-74 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (holding that the supervisor
was not an appropriate law enforcement authority for an employee's report of
theft because the supervisor had "authority to investigate employees'
conduct and carry out internal disciplinary procedures, but no authority to
enforce the theft laws of the state of Texas"); Tex. Dep't of Transp.
v. Garcia, No. 13-07-004-CV, 2010 WL 2543899, at *2 (Tex. App.—Corpus
Christi June 24, 2010, no pet.) (mem. op.) (holding that an "internal
complaint" to Texas Department of Transportation "enforcement
authorities" who only had the power to "conduct disciplinary
procedures" was not a report to an appropriate law enforcement
authority).  "In other words," TAMUK contends, "the ability to
require an employee to comply with state law does not make a person an appropriate
law enforcement authority," and "the Court must [instead] look to
whether the entity has authority to enforce the law allegedly violated."  See
Roberts v. Titus County Mem'l Hosp., 159 S.W.3d 764, 771-72 (Tex. App.—Texarkana
2005, pet. denied) (holding that hospital officials' "duty to obey the
law . . . is not the same as being a governmental entity
authorized to regulate under or enforce" the law alleged to be violated
and that the plaintiff failed to produce evidence in this regard); City of
Fort Worth v. DeOreo, 114 S.W.3d 664, 669 (Tex. App.—Fort Worth 2003, no
pet.) (holding that "a city's general authority to regulate under,
enforce, and investigate claims of sexual harassment is not enough to make it
an appropriate law enforcement authority under the Act").  We are unpersuaded
by TAMUK's contentions.  

First, TAMUK's reliance on cases holding
that an employer's ability to internally discipline its employees is
misplaced.  Here, Moreno's allegations do not involve the mere internal
disciplining of Saban for violating section 54.059 and rule 21.29.  Rather,
Moreno alleged that Saban violated a statute and produced evidence that Juarez
had the authority to enforce that statute at TAMUK.  See Needham, 82
S.W.3d at 318-19, 321-22 (denying whistleblower protection to a plaintiff who argued,
in part, that an employers' ability to internally discipline makes the employer
an appropriate authority under the Act).

Next, we do not believe the cases cited
by TAMUK stand for the broad proposition that an employer's ability to require
an employee to comply with state law is not sufficient under the Act and thus
stands as an absolute bar to a plaintiff's cause of action.  Such a
construction would contravene our obligation to liberally construe the Act.  See
Levingston, 221 S.W.3d at 218; Llanes, 64 S.W.3d at 641.  Further,
the cases cited by TAMUK involve either a lack of evidence of the plaintiff's
good faith belief or matter-of-law determinations with no consideration of the
relevant evidence of the plaintiff's good faith belief.  See Roberts,
159 S.W.3d at 771-72; DeOreo, 114 S.W.3d at 668-69.[5] 
That is not the circumstance before us in this appeal.  For although it is true
that a reviewing court must consider whether an entity actually has the
authority to regulate under or enforce the law alleged to be violated, a
plaintiff's whistleblower claim can nonetheless survive so long as she meets
the good faith requirement.  In other words, as reasoned by the Texas Supreme
Court in Needham, "our conclusion that [TAMUK] is not a
governmental entity authorized to regulate under, enforce, investigate, or
prosecute [section 54.059 and rule 21.29] does not end our inquiry."  See
82 S.W.3d at 320.  Moreno "may still obtain Whistleblower Act protection
if [she] in good faith believed that [TAMUK] was an appropriate law enforcement
authority as the statute defines the term."  See id.  

As previously discussed, Moreno produced
evidence showing that TAMUK employees were instructed to report suspected "illegal,
improper, or dishonest" conduct to their supervisors or the TAMUK
president or chief auditor.  See Tex. Dep't of Human Servs. v. Okoli,
317 S.W.3d 800, 811 (Tex. App.—Houston [1st Dist.] 2010, pet. filed) (holding
that whistleblower produced sufficient evidence of his good faith belief by
citing to an internal policy requiring him to report misconduct "to his
supervisor and then up his chain of command"); Univ. of Tex. Sw. Med.
Ctr. v. Gentilello, 317 S.W.3d 865, 871 (Tex. App.—Dallas 2010, pet. filed)
(holding that whistleblower produced sufficient evidence of good faith by
reporting Medicaid and Medicare violations to his supervisor who set policies
and had power to investigate violations).[6] 
Moreno also produced evidence that Juarez had the ability to enforce compliance
with the tuition waiver provision on his campus and apparently did so, as Saban
was required to pay the additional out-of-state tuition amount shortly after
Moreno's report.  Crucially, unlike the plaintiff in Needham whose good
faith argument relied entirely on the assumption that "an employer's power
to discipline an employee" for violating the law falls within the Act's
definition of appropriate law enforcement authority, the evidence demonstrated
that Moreno's belief was based on the assumption that Juarez can actually
enforce compliance with section 54.049 and rule 21.29, not merely internally
discipline Saban, and she produced evidence supporting the reasonableness of
that belief.  See Needham, 82 S.W.3d at 321; see also Okoli, 317
S.W.3d at 810-11 (noting that an employee is not automatically disqualified
from protection under the Whistleblower Act merely because she makes her report
to a superior or because the reported conduct "might also provide a basis
for internal employee discipline").  

In sum, Moreno's evidence showed that
she followed TAMUK policy in reporting the tuition waiver violation to Juarez
and that Juarez had both the duty and the power to enforce section 54.059 and
rule 21.29 at TAMUK.  Thus, based on the foregoing and indulging all reasonable
inferences in the evidence, as we must, in favor of Moreno, we conclude that
Moreno created a fact issue regarding the fourth issue of her whistleblower
claim, i.e., the reasonableness of her belief that Juarez was an appropriate
law enforcement authority.[7] 
See Tex. R. Civ. P.
166a(c); Miranda, 133 S.W.3d at 227-28.

C. 
Causation

            The fifth and final element of Moreno's
whistleblower claim was that she was terminated because of her report.  See
Tex. Gov't Code. Ann. §
554.002(a).  To show causation in a whistleblower case, an employee "must
demonstrate that after he or she reported a violation of the law in good faith
to an appropriate law enforcement authority, the employee suffered
discriminatory conduct by his or her employer that would not have occurred when
it did if the employee had not reported the illegal conduct."  City of
Fort Worth v. Zimlich, 29 S.W.3d 62, 67 (Tex. 2000) (citing Tex. Dep't
of Human Servs. v. Hinds, 904 S.W.2d 629, 633 (Tex. 1995)).  In other
words, the employee must establish a "but-for" causal nexus between
his report and the employer's prohibited conduct.  Tex. Dep't of Criminal
Justice v. McElyea, 239 S.W.3d 842, 855 (Tex. App.—Austin 2007, pet.
denied).  Circumstantial evidence is sufficient to establish the causal link
between the adverse employment action and the reporting of illegal conduct and
includes evidence that the employer (1) had knowledge of the report of illegal
conduct, (2) expressed a negative attitude toward the employee's report of the
conduct, (3) failed to adhere to established policies regarding employment
decisions, (4) treated the reporting employee discriminatorily in comparison to
similarly situated employees, and (5) stated false alternative reasons for the
adverse employment action.  Zimlich, 29 S.W.3d at 69.

            It is undisputed that Moreno made the report
directly to Saban and informed him she was also taking the matter to Juarez. 
It is also undisputed that Saban became very angry when Moreno told him what
she had learned about the tuition waiver at her conference.  Thus, there is
circumstantial evidence of the first two types.  

And while it is true that circumstantial
evidence of the employer's knowledge and negative attitude is not alone
sufficient to show a causal link, see id.; see also Hurley v. Tarrant
County, 232 S.W.3d 781, 787 (Tex. App.—Fort Worth 2007, no pet.) (holding
that evidence of an employer's negative attitude toward an employee's report
"presupposes" the employer's knowledge such that evidence of
knowledge alone is also not enough), Moreno also produced evidence to the trial
court that TAMUK failed to adhere to established policies in terminating her
and treated her differently than other similarly situated employees.  In his
deposition, Juarez testified that TAMUK has a progressive discipline policy. 
Kay Clayton, the provost of TAMUK at the time of the events giving rise to this
case, testified in her deposition that Moreno was the first TAMUK employee she
knew of who was terminated without receiving progressive discipline.  Juarez
also testified that Moreno was not given a severance package as were other
similarly situated employees.

            In its motion for summary judgment, TAMUK
produced evidence that Saban had other legitimate, non-retaliatory reasons for
terminating Moreno's employment, including that Moreno:  (1) was unable to
complete specific and complicated budget-related tasks on her own; (2) did not
provide budget reports to Saban in a timely manner after he requested them; (3)
interfered with and delayed the hiring process for an engineer because she did
not agree with the salary that Saban proposed for him; (4) failed to provide
required information and services to other TAMUK departments in a timely
manner; and (5) was generally uncooperative and difficult to work with. 
Further, in various interrogatory answers, Saban stated he had spoken with
McKinney about his desire to terminate Moreno; during this meeting, Saban
claims that McKinney told him to "get rid" of Moreno.

            Moreno produced evidence, however, that these
stated reasons for her termination were pretextual.  Clayton testified in her
deposition that Moreno was a very thorough, knowledgeable, and ethical person. 
Clayton testified that Moreno's communication, public relations, and resource
management skills "far exceed[ed] expectations" and that her ability
to cooperate "exceed[ed] expectations."  Clayton testified that
Moreno's "level of competency and efficiency" did not change after
Saban became Moreno's supervisor.  Remelius testified in her deposition that
Moreno had a "good personality," was "not difficult to get along
with or anything," and "was typically fairly responsive to me, to any
requests that I had."  In his deposition, Juarez testified that, although
Saban expressed concerns about Moreno's performance in December 2007, Saban
stated that his concerns were "[n]othing to worry about" and
"[n]othing serious."  Finally, and critically, McKinney denied in his
deposition that he told Saban to terminate Moreno's employment.

            

A whistleblower plaintiff need not prove
that her reporting of an illegal activity was the sole reason for her
employer's adverse action.  Hinds, 904 S.W.2d at 634.  So although TAMUK
presented evidence that Moreno was terminated because of her poor job
performance, Moreno produced ample circumstantial evidence, in response, that
her termination nonetheless would not have occurred when it did had she not
reported Saban's violation of the tuition waiver.  See id. at 633; McElyea,
239 S.W.3d at 855.  Thus, indulging all reasonable inferences in favor of
Moreno, we conclude that her evidence raised a material fact issue as to the
existence of a causal link between her report and TAMUK's alleged retaliatory
conduct. See Tex. R. Civ. P.
166a(c); Miranda, 133 S.W.3d at 227-28.

D. 
Summary

            Because Moreno produced evidence creating
fact issues as to each element of her whistleblower claim, the trial court
erred in granting TAMUK's plea to the jurisdiction and motion for summary
judgment.  We therefore sustain both of Moreno's issues.

V. 
Conclusion

 

            We reverse the judgment of the trial court
granting TAMUK's plea to the jurisdiction and motion for summary judgment and
dismissing Moreno's whistleblower claim and remand for proceedings consistent
with this opinion.

 

 

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Delivered
and filed the 

5th
day of May, 2011.









[1]
Moreno does not appeal the dismissal of her free speech claim or the dismissal
of Saban from the lawsuit.





[2]
TAMUK attached the following evidence to its motion for summary judgment:  (1)
excerpts from the depositions of Juarez, Moreno, Saban, and Michael McKinney,
Chancellor of the Texas A&M University (TAMU) system; (2) Moreno's
curriculum vitae; (3) Remelius's investigative report from Moreno's grievance
proceedings; (4) Saban's tuition-waiver application; and (5) the form used to
re-classify Saban as a faculty member.





[3]
Moreno attached the following evidence to her response:  (1) Moreno's
affidavit; (2) TAMU policy 7.01 regarding ethics; (3) excerpts from the
depositions of Kay Clayton, TAMUK provost at the time of the events underlying
the law suit, McKinney, Saban, Remelius, and Juarez; (4) TAMU policy 21.04
regarding the control of fraud and fraudulent activities; (5) Governor Rick
Perry's Executive Order 36 regarding the promulgation of policies to prevent,
detect, and eliminate fraud, waste, and abuse; (6) Remelius's investigative
report from Moreno's grievance proceeding; (7) TAMUK's interrogatory answers;
and (8) various excerpts from Texas statutes and regulations.





[4]
Although Moreno cites to rule 21.29 of title 19 of the administrative code,
that rule did not take effect until May 21, 2008.  See 33 Tex. Reg. 3939 (2008) (to be codified
at 19 Tex. Admin. Code § 21.29)
(proposed Feb. 29, 2008) (Tex. Higher Educ. Coordinating Bd.).  However, the
parties appear to agree that rule 21.29 is identical, for our purposes, to the
rule in effect at the time of Saban's alleged conduct, so we will consider the
language of rule 21.29 in our analysis.  See 19 Tex. Admin. Code § 21.29 (2010).





[5]
We note that in Duvall v. Texas Department of Human Services, the Austin
Court of Appeals held that, "[i]n the absence of other evidence, the fact
that [the whistleblower] believed that [his supervisor] had the authority to
take remedial action[, as opposed to regulating under or enforcing the law
alleged to be violated,] does not satisfy the objective or subjective component
of good faith contained in section 554.002(b)."  82 S.W.3d 474, 482 (Tex.
App.—Austin 2002, no pet.).  The record in this case, however, does contain
other evidence relevant to good faith—most importantly, evidence that Moreno
was following a TAMU system policy in reporting the tuition waiver violation to
Juarez.  Further, unlike the plaintiff in Duvall, Moreno produced
evidence that Juarez did have the authority to enforce section 54.059 and rule
21.29, rather than to merely take remedial action.  





[6]
As of the date of this opinion, the Texas Supreme Court has requested briefing
on the merits, but has neither set oral argument nor taken any other action in
these cases.





[7]
Because we conclude that Juarez was an appropriate law enforcement authority in
this case, we need not address Moreno's reports to THECB officials and Saban.  See
Tex. R. App. P. 47.1.